FILED
United States Court of Appeals
Tenth Circuit

October 12, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

JOSEPH RAY MENDIOLA,

    Defendant-Appellant.

No. 11-2209

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 2:CR-07-00320-RB-1)**

---

Dennis J. Candelaria, Assistant Federal Public Defender, Las Cruces, New Mexico, for Defendant-Appellant.

Jennifer M. Rozzoni, Assistant United States Attorney, (Kenneth J. Gonzales, United States Attorney, and David N. Williams, Assistant United States Attorney, on the brief), Denver, Colorado, for Plaintiff-Appellee.

---

Before **BRISCOE,** Chief Judge, **McKAY** and **GORSUCH**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

Defendant Joseph Mendiola appeals from the district court's imposition of

a two-year term of imprisonment following revocation of his supervised release.

Mendiola argues that, in light of the Supreme Court's recent decision in <u>Tapia v.</u>

United States, 131 S. Ct. 2382 (2011), the district court committed plain error in basing the length of the revocation sentence on Mendiola's need to participate in a prison-based drug rehabilitation program. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we agree with Mendiola. As a result, we reverse and remand to the district court with directions to vacate Mendiola's revocation sentence and resentence.

I

On February 22, 2007, a federal grand jury indicted Mendiola on a single count of being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1) and (2), and § 924(e). A federal arrest warrant was issued for Mendiola that same day, and the warrant was executed on March 20, 2007.

On May 7, 2007, Mendiola and the government entered into a written plea agreement, pursuant to which Mendiola agreed to plead guilty to an information charging him with a single count of being a felon in possession of ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(e).[1] As part of the plea agreement, the government agreed to dismiss the original indictment.

On August 21, 2007, Mendiola was sentenced to a term of imprisonment of thirty-three months, to be followed by a three-year term of supervised release. The district court designated Mendiola to participate in the "500-Hour Drug

---

[1] The information differed from the indictment in that it omitted any reference to Mendiola violating 18 U.S.C. § 922(g)(2).

2

Program." Dist. Ct. Docket Entry 29, at 1. The district court also imposed several special conditions of supervised release, including a requirement that Mendiola "[p]articipate in substance abuse program/drug testing." Id.

Mendiola completed his term of imprisonment and commenced his term of supervised release on August 7, 2009. Approximately fifteen months later, on November 8, 2010, Mendiola's supervising probation officer filed a petition seeking the revocation of Mendiola's supervised release. The petition alleged that Mendiola (1) "admitted to using methamphetamine on a weekly basis" during the month of October 2010, (2) tested positive for methamphetamine, and (3) "left [his] family home in Roswell, New Mexico" on November 3, 2010, "and ha[d] not returned." Dist. Ct. Docket Entry 34, at 1. On December 8, 2010, the district court held a hearing on the petition, during which Mendiola admitted the violations. The district court sentenced Mendiola to "23 DAYS OR TIME SERVED [following his arrest on the petition], WHICHEVER IS LESS." Dist. Ct. Docket Entry 44, at 1. The district court also imposed a twenty-four month term of supervised release, Dist. Ct. Docket Entry 46, at 4, and ordered that Mendiola, as special conditions of supervised release, "participate in and successfully complete a substance abuse treatment program . . . [and] refrain from the use and possession of alcohol and other forms of intoxicants," Dist. Ct. Docket Entry 44, at 1.

On March 23, 2011, Mendiola's supervising probation officer filed a

second petition to revoke supervised release, alleging that on March 1, 2011, Mendiola submitted a urine sample that tested positive for methamphetamine. Dist. Ct. Docket Entry 47, at 1. An amended petition to revoke supervised release was filed on July 21, 2011. In that amended petition, Mendiola's supervising probation officer alleged, as additional violations, that Mendiola had "failed to attend counseling, and [had failed to] submit to a random drug test." Dist. Ct. Docket Entry 57, at 2.

On October 6, 2011, the district court held a hearing on the amended petition. Mendiola admitted the alleged violations. The district court imposed a twenty-four month term of imprisonment, double the upper limit of the recommended guideline range of six to twelve months, and recommended that Mendiola participate in a drug program while incarcerated. In doing so, the district court offered the following explanation to Mendiola for the length of the selected term of imprisonment:

> It's tough. I mean, I, you know, I have not been in your shoes, but I've been a judge a long time, and I know it's a tough road. I mean, it's not easy.
>
> I don't know what the answer is. But I know the answer is, in this particular case, I'm going to give you two years. The maximum.
>
> And I'll tell you why. You heard me say to the other person. I think if I gave anything less than that, number one, is you'd waste time in the County Jail somewhere. Two years, you know, if you want, you get in the Bureau of Prisons, that gives you enough time to have a program for people that have 24 months. Anybody that goes in less than 24 months, they don't have a drug program, that's a good

4

one at least.

So it will be the sentence of the Court the Defendant be committed to the Bureau of Prisons for a period of 24 months. I will not order any supervised release after that because either he'll be successful or he won't.

I'm going to recommend a drug program at the Bureau of Prisons so that they know that that's my concern.

ROA, Vol. 3, at 6.

Mendiola's counsel and the district court then engaged in the following

colloquy:

[DEFENSE COUNSEL]: Mr. Mendiola has pointed out that, although very appreciative of the recommendation of course of the 500 hours drug and alcohol program, because he recognizes that he has a problem that he needs to deal with.

The problem is that the underlying offense, your Honor, was I believe a felon in possession of ammunition.

THE COURT: Felon in possession.

[DEFENSE COUNSEL]: And because of the firearm related offense, he's not going to be eligible for the 500 hour program.

He gets into the program, your Honor, the problem is that of course he doesn't receive any time off or reduction from his sentence because of the underlying offense.

THE COURT: Yeah. He won't get any time off, but he'll have an opportunity to take the program. I think that's worth it.

I mean, in terms of my sentencing philosophy and trying to get rehabilitation for him. He won't get any time off because of the – I understand, because of the firearm, but he's only doing 24 months anyhow. And I shouldn't say anyhow. It's a lot of time, and he's doing it, not me.

5

But in my estimation, the drug treatment program is going to help him more than anything. I've seen it. I, you know, and I've seen the results of those programs. And, I don't know – I've never seen one out west here, but as I say, I spent many hours in seeing those programs, and I've seen the results.

And I think, though he's not going to get any – that benefit, he's certainly going to get a life benefit.

Id. at 7-8.

Judgment was entered in the case on October 8, 2011. Mendiola filed a timely notice of appeal.

## II

On appeal, Mendiola argues that the district court "committed plain procedural error by lengthening [his] term of imprisonment based on consideration of an impermissible factor," i.e., the use of imprisonment to promote drug rehabilitation. Aplt. Br. at 7. In support, Mendiola argues that the Supreme Court's recent decision in Tapia "prohibit[s] consideration of rehabilitative needs when imposing any prison sentence." Aplt. Br. at 6.

Because Mendiola failed to object on this basis in the district court, plain error review now applies. United States v. Robertson, 568 F.3d 1203, 1210 (10th Cir. 2009); see United States v. Collins, 461 F. App'x 807, 809 (10th Cir. 2012) (applying plain error review to similar Tapia-based challenge to revocation sentence). Under the plain error standard, we may reverse only if a defendant demonstrates (1) error (2) that is plain, (3) that prejudices his substantial rights,

6

and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

The government in this case concedes that the district court erred in basing the length of Mendiola's revocation sentence on Mendiola's purported need to participate in a prison-based drug rehabilitation program. But it argues that the error was not plain because, at the time the district court imposed the revocation sentence, there was a circuit split as to whether a court could consider rehabilitative needs when imposing a revocation sentence.

We reject the government's arguments. Our case law quite clearly holds that plain error is measured at the time of appeal, and not as of the time of the district court's ruling being challenged on appeal.[2] United States v. Cordery, 656 F.3d 1103, 1107 (10th Cir. 2011). And, as we shall discuss in greater detail below, there currently is no circuit split regarding the impact of the Supreme Court's decision in Tapia. Rather, all of the circuit courts that have addressed the issue have concluded that, in light of Tapia, a district court imposing a revocation sentence cannot take into account a defendant's rehabilitative needs. Consequently, as we shall explain below, we conclude that the district court's

_____

[2] Even if we were free to reach the issue, we would reject the government's assertion that the district court's error was not plain at the time the district court imposed the revocation sentence on Mendiola. The Supreme Court's decision in Tapia was issued nearly four months prior to the time the district court imposed the revocation sentence, and, as we conclude below, Tapia's holding was clear and unequivocal.

7

error was plain. We also conclude that, because of the significant disparity between the advisory guideline range and the actual revocation sentence imposed by the district court, the error not only prejudiced Mendiola's substantial rights, but also seriously affects the fairness, integrity or public reputation of these judicial proceedings.

*a) Statutory authority - revocation of supervised release*

We begin our analysis by examining the district court's sentencing authority. Generally speaking, "[a] defendant who has been found guilty of an offense may be sentenced to a term of imprisonment." 18 U.S.C. § 3581(a). "[I]n determining whether to impose a term of imprisonment, and . . . in determining the length of [any such] term," a district court is required to "consider the factors set forth in section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation." 18 U.S.C. § 3582(a). A district court may also "include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment . . . ." 18 U.S.C. § 3583(a).

Depending upon a defendant's conduct while on supervised release, a district court "may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)," terminate, extend, or revoke a term of supervised release. 18 U.S.C. § 3583(e). If a district court decides to revoke a term of supervised release, it in turn

8

require[s] the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on postrelease supervision, if the court, pursuant to the Federal Rules of Criminal Procedure applicable to revocation of probation or supervised release, finds by a preponderance of the evidence that the defendant violated a condition of supervised release, except that a defendant whose term is revoked under this paragraph may not be required to serve on any such revocation more than 5 years in prison if the offense that resulted in the term of supervised release is a class A felony, more than 3 years in prison if such offense is a class B felony, more than 2 years in prison if such offense if a class C or D felony, or more than one year in any other case. . . .

18 U.S.C. § 3583(e)(3).

*b) This court's decision in* <u>Tsosie</u>

In 2004, this court decided the case of <u>United States v. Tsosie</u>, 376 F.3d 1210 (10th Cir. 2004). The defendant in <u>Tsosie</u> "challenge[d] the district court's decision to revoke his term of supervised release and require him instead to serve eighteen months in prison," arguing that "the district court erroneously based the length of his prison sentence on his need for rehabilitation . . . ." 376 F.3d at 1212. In particular, the defendant argued that "28 U.S.C. § 994(k) and 18 U.S.C. § 3582(a) prohibit the promotion of rehabilitation as a significant factor when a court determines the length of a prison sentence after revocation of supervised release." <u>Id.</u> at 1213.

In addressing whether the district court could consider rehabilitation when incarcerating a defendant, the panel majority distinguished between a term of

9

imprisonment imposed as a part of a defendant's "original sentence," and a term of imprisonment imposed following revocation of supervised release.  Id. at 1214. The panel majority acknowledged that the "clear mandate" of § 3582(a) prohibited a district court, "when imposing an original sentence to a term of imprisonment," from "consider[ing] rehabilitation of the defendant as the sole purpose for imprisonment."  Id.  But the panel majority concluded, however, "that Congress intended a district court to consider the medical and correctional needs of an offender in determining how much time that offender should be required to serve in prison after it becomes clear he will not abide by the conditions of his supervised release if he is not confined."  Id. at 1217.

In support, the panel majority stated:

> Our reading of the various statutes in question leads us to conclude Congress intended the limitations imposed by 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k) to apply only when a court is initially "imposing a sentence to a term of imprisonment" for the crime committed.  Section 3582(a) of title eighteen, and § 994(k) of title twenty-eight clarify that it is inappropriate to impose a sentence to a term of imprisonment solely for rehabilitative purposes or correctional treatment.  However, the same cautionary tone is not present in the statute governing supervised release or the revocation thereof.  In § 3583(c), Congress identified the factors, including medical and correctional treatment, that a court should consider when setting a "term of supervised release," § 3583(c), and when terminating, extending or revoking a "term of supervised release," § 3583(e)(1), (2), (3).  In the instance of revocation, Congress used the phrase "require the defendant to serve in prison all or part of the term of supervised release," § 3583(e)(3), rather than the phrase "impose a term of imprisonment," § 3582(a).  Cf. § 994(k) ("The Commission shall insure the guidelines reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating

10

the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.") (emphasis added). The difference in language between 18 U.S.C. § 3583(c), (e) ("term of supervised release") and 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k) ("term of imprisonment") reinforces the argument that Congress did not intend the limitations applicable to an initial sentence of imprisonment to be applicable in redetermining a sentence of supervised release to include prison time upon the revocation of the prior term of supervised release.

The rationale for allowing courts to consider rehabilitation when incarcerating a defendant upon violation of the conditions of his supervised release is "especially compelling," [United States v.] Giddings, 37 F.3d [1091, 1096 (5th Cir. 1994)], because the judge is merely altering the location of the defendant's supervised release from outside prison to inside prison.

> When revoking supervised release the district judge is not resentencing the defendant. The type and the term of the sentence has already been determined by the sentencing judge. The supervising district judge is bound by the sentence previously imposed, and at revocation is merely converting all or a portion of the supervised release period into a term of imprisonment. Given the limited discretion available to the supervising district judge, and the fact that the sentencing range is fixed by statute, consideration of the § 3553(a) factors may be appropriate to fashion a sentence conforming to the purpose and intent of the original sentence, and that is within the boundaries established by the sentencing judge.

Id. Because the court is not imposing a "term of imprisonment" after revocation, but rather converting a term of supervised release, the court is merely requiring the defendant "to serve in prison all or part of the term of supervised release" as contemplated by the plain language of § 3583(e)(3).

Because [medical and correctional needs] may be considered in determining the length of the period of supervised release and because a district court may require a person to serve in prison the period of supervised release, the statute contemplates that the medical and correctional needs of the offender will bear on the length

of time an offender serves in prison following revocation of supervised release.

Id. at 1215-16 (footnote omitted).

The panel majority also concluded in support that "[t]he legislative history for § 3583 makes clear that the terms of a defendant's supervised release should be considered separately from those of his term of imprisonment and requires a court's consideration of rehabilitation factors." Id. at 1216. According to the panel majority, "post-revocation supervised release served within a prison should not trigger the limiting language of 18 U.S.C. § 3582(a) and 28 U.S.C. § 994(k) because the defendant is not being sentenced to a term of imprisonment for the original crime," and instead "is serving his term of supervised release in prison because he failed to abide by the conditions for serving supervised release outside of prison." Id. at 1217.

In the dissent from the panel majority, Judge O'Brien returned to the language of the pertinent sentencing statutes, including those applicable to revocation of supervised release, and found no support for the majority's position. He saw "nothing in any of the statutes even remotely suggesting that the incarceration limits contained in § 3582 and § 994 are not global in application. More specifically, there is nothing in the structure or text of 18 U.S.C. § 3583, or in logic, to suggest revocations of supervised release are somehow exempt from those global restrictions." Id. at 1221. And he rejected the majority's suggestion

12

that a revocation sentence is merely a continuation, in prison, of supervised release:

> Contrary to the majority's holding–that supervised release is the same whether served inside or outside prison walls–a revocation of supervised release, perhaps resulting in months or years behind bars, is a sentence of imprisonment. Logic compels. So do the statutes, fairly read.

Id. The views expressed in Judge O'Brien's dissent were prescient given the Supreme Court's ruling in Tapia.

*c) The Supreme Court's decision in Tapia*

In Tapia, the Supreme Court "granted certiorari to consider whether [18 U.S.C.] § 3582(a) permits a sentencing court to impose or lengthen a prison term in order to foster a defendant's rehabilitation." 131 S. Ct. at 2386. In addressing that question, the Court began by noting that, prior to 1984, "the Federal Government employed in criminal cases a system of indeterminate sentencing" that "was premised on a faith in rehabilitation." Id. (internal quotation marks omitted). That "model of indeterminate sentencing eventually fell into disfavor," the Court noted, and in 1984 Congress "enacted the Sentencing Reform Act [(SRA)] . . . to overhaul federal sentencing practices." Id. "Under the SRA, a judge sentencing a federal offender must impose at least one of the following sanctions: imprisonment (often followed by supervised release), probation, or a fine." Id. at 2387. And, "[i]n determining the appropriate sentence from among these options," a judge must consider the general "purposes of sentencing," i.e.,

13

"retribution, deterrence, incapacitation, and rehabilitation," "to the extent that they are applicable in a given case." Id. (internal quotation marks omitted).

Turning to the language of § 3582(a), the Court noted that it "specifies the 'factors to be considered' when a court orders imprisonment," and provides, in pertinent part, that a sentencing court must "recogniz[e] that imprisonment is not an appropriate means of promoting correction and rehabilitation." Id. at 2388. In other words, the Court held, § 3582(a) "tells courts that they should acknowledge that imprisonment is not suitable for the purpose of promoting rehabilitation," and courts must acknowledge this "when 'determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, [when] determining the length of the term.'" Id. (quoting § 3582(a)).

The Court also emphasized that "another provision of the SRA restates § 3582(a)'s message, but to a different audience." Id. at 2390. "That provision, 28 U.S.C. § 994(k), directs the Sentencing Commission to ensure that the Guidelines 'reflect the inappropriateness of imposing a sentence to a term of imprisonment for the purpose of rehabilitating the defendant or providing the defendant with needed educational or vocational training, medical care, or other correctional treatment.'" Id. (quoting § 994(k)). "In this way," the Court noted, "Congress ensured that . . . [e]ach actor at each stage in the sentencing process receives the same message: Do not think about prison as a way to rehabilitate an offender." Id.

14

Lastly, the Court noted "the absence of any provision granting courts the power to ensure that offenders participate in prison rehabilitation programs." Id. "If Congress had . . . meant to allow courts to base prison terms on offenders' rehabilitative needs," the Court stated, "it would have given courts the capacity to ensure that offenders participate in prison correctional programs." Id. "But in fact," the Court noted, "courts do not have this authority." Id. Although "[a] sentencing court can *recommend* that the BOP place an offender in a particular facility or program," "the BOP has plenary control, subject to statutory constraints, over the place of the prisoner's imprisonment and the treatment programs (if any) in which he may participate." Id. (italics in original; internal quotation marks and citations omitted).

In sum, the Court held, "Section 3582(a) precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation." Id. at 2391.

*d) The impact of Tapia on Tsosie*

Absent Tapia, we would be bound by Tsosie to conclude that the district court in this case did not err, let alone commit plain error, in imposing the revocation sentence on Mendiola. See Barber v. T. D. Williamson, 254 F.3d 1223, 1229 (10th Cir. 2001) ("[I]t is well established that one panel cannot overrule the judgment of another panel of this court . . . absent en banc reconsideration or a superseding contrary decision by the Supreme Court.")

15

(internal quotation marks omitted).  As we have noted, the panel majority in

Tsosie held "that Congress intended a district court to consider the medical and

correctional needs of an offender in determining how much time that offender

should be required to serve in prison after it becomes clear he will not abide by

the conditions of his supervised release if he is not confined."  376 F.3d at 1217.

We must decide, however, whether Tapia effectively invalidated the

majority's decision in Tsosie.  See Hurd v. Pittsburg State Univ., 109 F.3d 1540,

1542 (10th Cir. 1997) ("In the case of an intervening Supreme Court ruling, a

single panel is permitted to reconsider a previous Tenth Circuit decision to the

extent the new case law invalidates our previous analysis.").  In a dissent to a

recently-issued order and judgment, Judge Holloway argued that Tapia in fact

"invalidated the analysis engaged by the Tsosie panel in distinguishing between

18 U.S.C. §§ 3582 and 3583 . . . ."  Collins, 461 F. App'x at 811 (Holloway, J.,

dissenting).[3]  More specifically, Judge Holloway argued that "the Supreme Court

_____

[3] It is important to note that the panel in Collins did not disagree on the
question of whether Tapia invalidated Tsosie.  Indeed, the panel majority in
Collins did not reach the issue because they concluded that the defendant had
failed to establish that the district court in that case determined the length of the
revocation sentence based upon the defendant's rehabilitative needs.  The panel
majority noted the district court chose the maximum term because defendant was
unable to remain on supervised release without violating its conditions and
because he posed a continuing danger to the community.  As a result, the panel
majority concluded that the third prong of the plain error standard was not
satisfied.  Judge Holloway disagreed with the majority on this point, concluding
that rehabilitation had played a role in the district court's imposition of a term of
imprisonment.  Only as a consequence of that disagreement did Judge Holloway

(continued...)

16

[in Tapia] . . . addressed and relied heavily on a crucial consideration that . . . appl[ies equally] to [revocation sentencing under] § 3583: 'the absence of any authority to the sentencing court either to assign a prisoner to a prison where the desired treatment or training is available . . . , or to require the prison to enroll a particular prisoner to take part in [the rehabilitation scheme].'" Id. (quoting United States v. Molignaro, 649 F.3d 1, 4 (1st Cir. 2011) (Souter, J., sitting by designation)). In other words, Judge Holloway argued, "[t]he Supreme Court's reliance on Congress's declination to grant judicial authority to control a prisoner's rehabilitation extinguishes any . . . distinction between [initial sentencing under] § 3582 and [revocation sentencing under] § 3583 as reasoned in Tsosie." Id. And, he argued, "[t]he great importance placed on this consideration by the Supreme Court [in Tapia] necessarily supersedes consideration of the more semantic distinctions drawn in Tsosie." Id. at 812.

Significantly, Judge Holloway's reasoning finds support in virtually all of the post-Tapia decisions from other circuits. See United States v. Taylor, 679 F.3d 1005, 1006 (8th Cir. 2012) ("We agree with those circuit courts which have concluded that Tapia applies upon revocation of supervised release as well as at an initial sentencing."); United States v. Grant, 664 F.3d 276, 282 (9th Cir. 2011)

---

[3](...continued)
then reach the Tapia issue. Our discussion of, and ultimate agreement with, Judge Holloway's analysis is limited solely to the question of whether Tapia invalidated Tsosie.

17

(applying Tapia and concluding that "prison, whether as an initial sentence or on revocation of supervised release, can be imposed and the duration selected only for purposes of retribution, deterrence, and incapacitation, not rehabilitation"); United States v. Molignaro, 649 F.3d 1, 5 (1st Cir. 2011) (Souter, J., sitting by designation) ("We feel bound [by Tapia] to conclude that rehabilitation concerns must be treated as out of place at a resentencing to prison [following revocation of supervised release], just as ordering commitment initially."). Although a Fifth Circuit panel initially concluded that Tapia did not apply to imprisonment on revocation of supervised release, United States v. Breland, 647 F.3d 284, 288-90 (5th Cir. 2011), "the Supreme Court granted certiorari in that case and vacated the judgment after Solicitor General agreed that Tapia does apply to revocation of release sentencings." Taylor, 679 F.3d at 1007 (citing Breland v. United States, — U.S. —, 132 S. Ct. 1096, 181 L.Ed.2d 973 (2012)).

We agree with the reasoning expressed by Judge Holloway and our sister circuits and adopt it here. Consequently, we conclude that Tapia has effectively invalidated the majority's decision in Tsosie.

*e) Plain error analysis*

That leaves the question of whether the district court in this case committed plain error when it sentenced Mendiola to a twenty-four month term of imprisonment, double the length of the upper limit of the recommended guideline range, for the express purpose of "giv[ing] [Mendiola] enough time to" participate

18

in a 500-hour prison drug and alcohol rehabilitation program. ROA, Vol. 3, at 6. In Taylor, the Eighth Circuit recently concluded that a nearly-identical revocation sentence was plainly erroneous in light of Tapia. 679 F.3d at 1007 ("The district court plainly erred when it sentenced Taylor to twenty-four months while 'using that number because that makes him eligible to participate in the 500-hour drug program available in the Bureau of Prisons.'"). In both the case at hand and in Taylor, "the district court chose [the defendant's] sentence for the specific reason to ensure that he could participate in a particular drug treatment program and that was plain error under Tapia." Id.; see also Cordery, 656 F.3d at 1105 (10th Cir.2011) (concluding that similar plain error occurred in case involving initial sentencing). Like the Eighth Circuit in Taylor, we conclude that the district court in this case committed an error that was plain.

We further conclude, as did the Eighth Circuit in Taylor, that "[t]he district court's error affected [Mendiola]'s substantial rights in a manner that seriously affected the fairness, integrity, or public reputation of judicial proceedings." 679 F.3d at 1007. Specifically, given the applicable "advisory guideline range of 6 to 12 months," it is reasonable to assume that, had the district court "not focused on a particular drug treatment program within a federal institution," it likely would have imposed a lesser sentence. Id. Accordingly, the third and fourth prongs of the plain error standard have been met, and this case must be remanded to the district court for resentencing.

19

We REVERSE and REMAND to the district court with directions to vacate Mendiola's revocation sentence and resentence.

11-2209, *United States v. Mendiola*

**GORSUCH, J.**, concurring.

I am pleased to concur in the court's opinion and write to offer only a few additional thoughts.

The government admits the Supreme Court's opinion in *Tapia v. United States*, 131 S. Ct. 2382 (2011), abrogates our holding in *United States v. Tsosie*, 376 F.3d 1210 (10th Cir. 2004). It admits Mr. Mendiola's sentence in prison is unlawful. Still, the government says he should be kept there because his sentence isn't *plainly* erroneous. Alternatively, the government says reversal isn't warranted because the district court would have imposed the same sentence even if it hadn't considered Mr. Mendiola's rehabilitative needs — in this way resting on both the second and third prongs of our plain error test. *See United States v. Gonzales-Huerta*, 403 F.3d 727, 732 (10th Cir. 2005) (en banc) ("Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.").

Neither argument is persuasive.

Take the government's second argument first. For a defendant to establish that a claimed error affects his substantial rights, he must show "there is a reasonable probability that, but for the error claimed, the result of the proceeding would have been different." *United States v. Hasan*, 526 F.3d 653, 665 (10th Cir.

2008) (internal quotation marks omitted). When revoking Mr. Mendiola's supervised release and sentencing him to prison, the district court in this case varied upward to the statutory maximum of twenty-four months — twice the guidelines-recommended maximum of twelve months. And it did so for the express purpose of rendering Mr. Mendiola eligible for a prison drug treatment program open only to those "that have 24 months [in prison]." ROA, Vol. 3, at 6; *see also id.* ("Anybody that goes [into prison for] less than 24 months, they don't have" access to the program.). The court cited Mr. Mendiola's rehabilitative needs and the prison treatment program no fewer than *nine times* in the course of justifying its variance. Plainly, if the district court had known that a statute prohibited it from considering rehabilitation when imposing a term of imprisonment, there is a "reasonable probability" a shorter prison sentence would have followed.

The government says *United States v. Collins*, 461 F. App'x 807 (10th Cir. 2012), proves otherwise. There, we held that any potential *Tapia* error had no effect on the defendant's substantial rights. But we reached that conclusion only because the district court in that case did *not* rely on rehabilitation considerations when crafting the prison sentence it issued. In fact, the district court in *Collins* issued a sentence *longer* than necessary to ensure the defendant's eligibility for the relevant prison treatment and rehabilitation program. And the district court expressly justified its decision on the ground the defendant in that case "was *not*

amenable to . . . treatment and, as a result, posed a continuing danger to the community." *Id.* at 810 (emphasis added). Thus, in *Collins* we could be confident rehabilitation concerns didn't undergird the defendant's sentence. Here, by contrast, we can be no less confident that rehabilitation considerations *were* at the heart of Mr. Mendiola's sentence.

The government's remaining argument invokes the second prong of the plain error standard. There we must ask whether the error at issue is "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). While this aspect of the government's case may be enough to invite some pause, ultimately it too proves unpersuasive.

The plainness of the error before us comes clear in this way. In 18 U.S.C. § 3582(a) Congress expressly told federal courts they may not impose any "term of imprisonment" to facilitate rehabilitation. *See id.* ("[I]n determining whether to impose a term of imprisonment . . . and . . . in determining the length of the term . . . [courts must] recogniz[e] that imprisonment is not an appropriate means of promoting . . . rehabilitation."). In *Tapia*, the Supreme Court taught us that the word "imprisonment" carries its natural and ordinary meaning — encompassing "'[t]he state of being confined' or 'a period of confinement.'" 131 S. Ct. at 2389 (alteration in original) (quoting *Black's Law Dictionary* 825 (9th ed. 2009)). From this, it follows ineluctably (plainly) that § 3582(a) prohibits a court from relying on rehabilitation considerations *any* time it chooses to send someone to a

term of confinement in a federal prison, whether as part of an initial sentence (as in *Tapia*) or as part of a sentence issued after a probation revocation (as in our case). *See id.* at 2391 (the statute "precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation"). About all this, it turns out, Judge O'Brien was exactly right. *See Tsosie*, 376 F.3d at 1219 (O'Brien, J., dissenting).

Admittedly, 18 U.S.C. § 3583(e) directs district courts to consider a variety of § 3553(a) factors, including rehabilitation, when deciding whether to extend, modify, or end a term of supervised release. But this does not necessarily imply that a court may use prison as a rehabilitative tool as part of a revocation order. After *Tapia*, we know § 3582(a) means what it says, ruling out any use of prison for rehabilitation. Neither does *Tapia*'s teaching leave § 3583(e) bereft of meaning or incompatible with § 3582(a). After all, when deciding whether to extend, modify, or end a term of supervised release the district court has *many* options before it to consider, not just prison, and a court may lawfully consider rehabilitation in the context of some of these other options. This fact confirms that we cannot fairly draw the "inference that treatment" is necessarily a proper consideration under § 3583(e) when it comes to setting a prison term. *United States v. Molignaro*, 649 F.3d 1, 3 (1st Cir. 2011).

The unavoidability and obviousness of the error we face is reinforced by still two more facts.

-4-

First, *Tapia* found it "illuminating" that there is a complete "absence of any [statutory] provision granting courts the power to ensure that offenders participate in prison rehabilitation programs." 131 S. Ct. at 2390. If Congress had "meant to allow courts to base prison terms on offenders' rehabilitative needs," the Court explained, "it would have given courts the capacity to ensure that offenders participate in prison correctional programs." *Id.* But Congress did not. Judges may *recommend* placement in treatment programs but they may not *compel* it. Only the Bureau of Prisons can. This, the Court found, "speaks volumes. It indicates Congress did not intend that courts consider offenders' rehabilitative needs when imposing prison sentences." *Id.* at 2391. All of these insights apply equally here. In revoking a defendant's supervised release and imposing a prison term the district court has no more authority to ensure his admission to a treatment program than it does at initial sentencing. *Tapia*'s reasoning, thus, "speaks volumes" no less to our case than one involving an initial sentence and the error we face cannot be fairly described as some faint miscue.

Second, Congress itself — expressly and repeatedly — equated the act of sending a defendant to prison after the revocation of supervised release with the imposition of a "term of imprisonment." *See, e.g.*, 18 U.S.C. § 3583(g) ("[T]he court shall revoke the term of supervised release and require the defendant to serve a *term of imprisonment* . . . ." (emphasis added)); *id.* § 3583(h) ("When a term of supervised release is revoked and the defendant is required to serve a *term*

-5-

*of imprisonment . . . .*" (emphasis added)); *id.* § 3583(i) ("The power of the court to revoke a term of supervised release . . . and to order the defendant to serve a *term of imprisonment . . . .*" (emphasis added)).  Indeed, sending a defendant to prison after revocation has to be a "term of imprisonment" for any number of other sentencing administration statutes to make any sense at all.  *See, e.g.*, 18 U.S.C. § 3585(a) (when prison time starts); 18 U.S.C. §3624(b) (calculation of good time credits); 18 U.S.C. § 3624(a) (time when a prisoner is released).  I see no fair way we might now, after *Tapia*, ignore the force of these plain directions and definitions.

With the first three prongs of the plain error test met, that leaves only the fourth and final question to ask — whether the error before us merits correction because it tends to call into question the "fairness, integrity, or public reputation of judicial proceedings." *Johnson v. United States*, 520 U.S. 461, 469 (1997). Here the answer is obvious, too.  Few things should give us more pause than the possibility of mistakenly sending to prison a man Congress has said should not be there.  Mr. Mendiola's sentence must be vacated and the district court given a chance to consider anew a sentence that conforms to the directions we have from Congress and the Court.