FILED
United States Court of Appeals
Tenth Circuit

February 14, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

DAVID LEE WHITE,

Defendant - Appellant.

No. 12-2071

D. New Mexico

(D.C. No. 2:11-CR-02080-MV-1)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

**INTRODUCTION**

David White appeals a sentence of eighteen months' imprisonment imposed

by the district court upon revocation of White's term of supervised release. He

asserts the district court improperly considered the need for rehabilitation in

imposing a sentence above the advisory range set out in the United States

Sentencing Guidelines. *See Tapia v. United States*, 131 S. Ct. 2382, 2391-92

(2011) (holding that 18 U.S.C. § 3582(a) "prevents a sentencing court from

---

[*]This order and judgment is not binding precedent except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

imposing or lengthening a prison term because the court thinks an offender will benefit from a prison treatment program"); *see also United States v. Mendiola*, 696 F.3d 1033, 1041 (10th Cir. 2012) (extending *Tapia* to the context of imposition of a sentence of imprisonment upon revocation of supervised release). White did not raise this objection below and has failed to demonstrate any such unpreserved error, assuming it exists, seriously affected the fairness, integrity, or public reputation of his judicial proceedings. *United States v. Gonzalez-Huerta*, 403 F.3d 727, 736 (10th Cir. 2005) (en banc). Accordingly, exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(2), this court **affirms** the district court's sentence.

## BACKGROUND

White pleaded guilty to a single count of failing to update his sex-offender registration, as required by the Sex Offender Registration and Notification Act. 18 U.S.C. § 2250(a). The district court sentenced him to time served, a downward variance from the range set out in the advisory sentencing guidelines. In deciding to vary downward, the district court cited White's advanced age (seventy-six at the time of sentencing), ill health, and "efforts along the way to register correctly." The district court specifically recognized its decision to vary downward was at odds with the conclusion White continued to "pose[] a danger to society." It concluded, however, that it could address this continuing danger by

requiring that White undergo further treatment and supervision. In that vein, the district court imposed upon White a life-term of supervised release. One of the special conditions of White's supervision required him to "reside at and complete a program at a Residential Re-Entry Center for a period of up to 6 months as approved by the probation officer." When White expressed reluctance to return to a sex offender treatment program, the district court responded as follows: "You're still having difficulties that I consider pretty serious and which make you pretty dangerous to the community . . . . So you're going to have to successfully complete treatment or else you go to jail. Is that clear?"

Within three weeks of commencing supervision, the probation officer petitioned the court to revoke White's supervised release. The petition alleged the residential re-entry center terminated White from the program because of "inappropriate conduct and continued noncompliance." At an evidentiary hearing on the petition, the probation officer explained White had been terminated from the re-entry facility for the following combination of reasons: (1) residents complained White had come out of the shower nude and touched his genitals while taunting them; (2) White "used profanity towards staff, and struck the front door of the central monitoring unit"; (3) the director of the facility reported White was "masturbating at the facility"; and (4) White disclosed to residents of the facility that he was a pedophile, endangering his safety. White denied coming out

-3-

of the shower nude[1] or masturbating in front of anyone. He also denied revealing the nature of his criminal history to other residents of the re-entry facility. White attributed his problems at the facility to being picked on by his Hispanic roommates. He claimed his problems with the other residents were resolved when he was moved to a unit where there were no "Mexican gangbangers." White admitted to two incidents when he cursed at the staff. He explained that one incident was the result of his frustration with being mistreated by his roommates and another was the result of staff members refusing to let him leave to obtain some medication. Based on the testimony at the evidentiary hearing, the district court found White had violated the terms of his supervision:

> Given your admissions and the termination letter, and given the fact that your condition required you to reside and to complete the residential re-entry center, I do not have to find that you masturbated, but I do find that you unsuccessfully terminated from [the re-entry center] for inappropriate conduct and continued noncompliance. The standard was preponderance of the evidence, and the Court finds that the government has met its burden.

Having found a violation of the terms of supervised release, the district court turned to the issue of disposition, i.e., reinstatement or revocation and, if revocation, the appropriate sentence. The government presented the testimony of Dr. Janette Castillo, a licensed psychologist. Dr. Castillo testified she had been

---

[1]Despite this denial, the probation officer testified White previously admitted exiting the shower while touching his genitals, but had stated "it wasn't intentional to [the other] residents."

asked to conduct a sex-offense assessment on White. When asked whether White "was a danger to society in [his] current state," Dr. Castillo responded that White "has a very high risk of reoffending." Accordingly, Dr. Castillo was of the opinion White was in need of intensive inpatient therapy. At the conclusion of Dr. Castillo's testimony, the prosecutor recommended sending White to an inpatient treatment facility. The prosecutor could not identify, however, a single inpatient program that would take White. White's attorney opposed involuntary commitment of any kind, especially a term of imprisonment. The probation officer agreed White needed inpatient treatment. Treatment was, however, a matter of secondary concern to the probation officer. Most importantly, the probation officer thought White should be sentenced to a lengthy term of imprisonment: "based on Mr. White's history, his characteristics, the violation before the Court today and his actions, I think at a minimum, a sentence at the high end of the guideline range is warranted, Your Honor."[2]

---

[2]Although the possibility of treatment was not tied to her suggestion of a lengthy prison sentence, the probation officer was of the opinion that White could benefit from inpatient treatment while confined at the Bureau of Prisons:

> The [BOP facility being discussed], I've toured it myself, Your Honor, in 2010, and it's a 112-bed facility for male sex offenders. It's very intensive. It requires them to attend individual sessions, group sessions. It's a great program. I sat in on group sessions and, in my opinion, it is exactly what Mr. White needs.
>
> Now, in terms of whether Mr. White is going to participate,
> (continued...)

At the conclusion of the hearing, the district court revoked White's supervised release and imposed a term of imprisonment. In arriving at an appropriate sentence, the district court correctly determined that White's advisory guidelines range was four to ten months. The district court concluded, however, that the sentencing factors set out in 18 U.S.C. § 3553(a) warranted a sentence above the applicable guidelines range.[3] In that regard, the district court concluded as follows:

> After evaluating the factors listed above, the Court finds the defendant has violated the conditions of his supervision by being unsuccessfully terminated from [the re-entry facility]. Furthermore, the defendant's history includes in 1960, being convicted of crimes against children and sexual perversion as he performed oral sex on a young girl in the State of California. In [1981], he was convicted of sodomy in the first degree, as he sexually penetrated and abused a nine-year-old female child in the State of Oregon. In 1990, [he was] convicted of sexual assault on a child in the State of Colorado, as he forced a seven-year-old boy to commit sexual acts against his will on two occasions. Currently, he's pending a charge for enticement of a child in Lea County, New Mexico.

---

[2](...continued)
that is up to Mr. White. But the option is there for him. It's a great program and it would give him insight. It would minimize the risk to the community when he is released. And I think it would be a win/win for the community and for Mr. White.

[3]In briefly setting out the list of factors warranting an upward variance, the district court listed each of the statutory factors from §3553(a), including the "need to provide the defendant with medical care or other corrective treatment in the most efficient and effective manner pursuant to 3553(a)(2)(D)." *But see Tapia v. United States*, 131 S. Ct. 2382, 2391 (2011) (holding that sentencing court is prohibited from "imposing or lengthening a prison term to promote an offender's rehabilitation").

Additionally, the defendant admitted he joined a group called Parents Without Partners in order to gain access to single women who had young children he could molest. The defendant also admitted to past conduct wherein he exposed himself to various children in various states.

In this case, the defendant failed to participate and complete the [re-entry] program. He was unsuccessfully terminated for exposing his genitals to others, using profanity towards staff, and failing to follow facility rules.

These combined circumstances demonstrate a history of conduct that poses a risk to the community and shows a lack of respect for the law. Based on these findings, the Court has determined that a sentence above the advisory revocation guideline range will be reasonable and sufficient but not greater than necessary to accomplish the sentencing goals set forth at 3553(a).

The district court sentenced White to eighteen months' imprisonment, followed by twenty years of supervised release. It recommended that White "be designated to the Bureau of Prisons' residential sex offender treatment such as FMC Devens in Massachusetts." Demonstrating its focus at sentencing was on potential danger to the public, the district court further recommended that if White "refuse[d] to participate in sex offender treatment, that he be evaluated for possible certification as a sexually dangerous person."

## ANALYSIS

On appeal, White asserts the district court committed procedural error by relying on an improper sentencing factor—the need for rehabilitation—in varying upward from the advisory range set out in the sentencing guidelines. Because

White did not raise this issue before the district court, our review on appeal is limited to plain error. *Gonzalez-Huerta*, 403 F.3d at 732. To satisfy the plain error standard, White must show that the district court committed (1) an error, (2) that is plain, and (3) that affected his substantial rights. *Id.* If these three prerequisites are met, this court has discretion to correct the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

In support of his argument the district court plainly erred in varying upward to promote his rehabilitation, White emphasizes the district court was concerned about treatment options at the revocation hearing and, in announcing sentence, specifically recommended that the BOP send him to a sex offender treatment program. In response, the government notes that in stating its reasons for imposing the sentence it did, the district court did not state it was doing so for the purpose of making White eligible for any BOP treatment program. Furthermore, according to the government, *Tapia* made clear a sentencing "court commits no error by discussing the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs." 131 S. Ct. at 2392.[4] Finally, the government argues this court should discount the district court's inclusion of § 3553(a)(2)(D) in the list of factors it considered in deciding to vary upward

_____

[4]*Tapia* likewise made clear a sentencing court can, consistent with § 3582(a), "urge the BOP to place an offender in a prison treatment program." 131 S. Ct. at 2392.

from the advisory range because that reference came as part of a "formulaic recitation of the statutorily enumerated sentencing factors." *See United States v. Collins*, 461 F. App'x 807, 810 (10th Cir. 2012) (holding, in similar circumstances, that a "formulaic recitation" of the sentencing factor set out in § 3553(a)(2)(D) "supplies little indication that a court lengthened a sentence for rehabilitative purposes").

The government's arguments as to the absence of error have strong visceral appeal. Nevertheless, this court need not resolve that question because White has failed to demonstrate the error he identifies seriously affected the fairness or integrity of his sentencing proceeding or that a failure to correct the error would negatively affect the public perception of these judicial proceedings. Under plain error review, the burden is on White to establish all four elements. *United States v. Dominguez Benitez*, 542 U.S. 74, 82 (2004). That is, if White fails to satisfy any one element, he is not entitled to relief. *United States v. Gonzalez Edeza*, 359 F.3d 1246, 1250 (10th Cir. 2004); *see also United States v. Garza*, 566 F.3d 1194, 1201 (10th Cir. 2009) ("[W]e need not resolve whether the challenged testimony was error or whether that error was plain[] because [the appellant] cannot satisfy the fourth element of plain error review . . . ."). To show an alleged error seriously affected the fairness, integrity, or public reputation of the judicial proceeding, White must demonstrate a failure to correct the alleged error would result in a "miscarriage of justice." *Gonzalez–Huerta*, 403 F.3d at 736. He can

establish such an error by demonstrating "a strong possibility of receiving a significantly lower sentence" absent the error. *United States v. Meacham*, 567 F.3d 1184, 1190 (10th Cir. 2009) (quotation omitted).

A close review of the sentencing transcript in this case leaves no doubt the district court's overriding reason for varying upward was to protect the public. In the original sentencing proceeding, the district court had varied downward in the hope treatment would spare an elderly offender from imprisonment. White demonstrated he was not amenable to treatment by being terminated from the residential re-entry facility less than one month after beginning supervision. By the time of the revocation hearing, the district court had received Dr. Castillo's risk assessment, which specifically indicated White was a danger to the public because he was highly likely to reoffend. It was the confluence of these two factors, the danger to the public and the lack of amenability to treatment that motivated the district court to vary upward from the advisory guidelines range. There is simply nothing in the record to indicate the district court would likely have given White *a more lenient sentence* if it had not considered the question of White's rehabilitation.[5] This court's conclusion in this regard is bolstered by the

---

[5]In fact, the record demonstrates the contrary. That is, the district court was of the view an eighteen-month sentence was sufficiently long to protect the public only if White independently and voluntarily undertook an effort to rehabilitate himself while he was incarcerated. Absent such an independent and voluntary effort on the part of White, the district court was of the view White

(continued...)

complete lack of any discussion by the district court of how much time in prison was necessary for White to complete a Bureau of Prisons sex-offender treatment program. Because White has failed to carry his burden of establishing the fourth prong of plain error review, he is not entitled to relief on appeal.

## CONCLUSION

The sentencing imposed by the United States District Court for the District of New Mexico is hereby **AFFIRMED**.

ENTERED FOR THE COURT


Michael R. Murphy
Circuit Judge

---

[5](...continued)
would almost surely reoffend. It is for that very reason the district court made the following recommendation at sentencing:

> The Court recommends the defendant be designated to the Bureau of Prisons' residential sex offender treatment such as FMC Devens in Massachusetts. It is also recommended that in the event Mr. White refuses to participate in sex offender treatment, that he be evaluated for possible certification as a sexually dangerous person. The Court further recommends that the Bureau of Prisons notify this Court of the location of the defendant's designation.

Thus, the record simply does not indicate the district court would have most likely given White a substantially shorter sentence if it had not considered the issue of rehabilitation. It instead indicates the district court thought White should be evaluated for indefinite civil commitment should he not undertake an effort to rehabilitate himself while imprisoned.