**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 20, 2014**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JAMES DOUGLAS,

      Defendant-Appellant.

No. 13-3270
(D.C. No. 2:03-CR-20179-JWL-JPO-1)
(D. Kan.)

## ORDER AND JUDGMENT[*]

Before **GORSUCH**, **MURPHY**, and **HOLMES**, Circuit Judges.

James Douglas appeals from the district court's imposition of a thirty-six-month prison sentence following revocation of his supervised release. Mr. Douglas contends that this sentence was procedurally unreasonable. Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we **affirm**.

---

[*] After examining the briefs and appellate record, this panel has decided unanimously to grant the parties' request for a decision on the briefs. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Federal Rule of Appellate Procedure 32.1 and Tenth Circuit Rule 32.1.

# I

In 2003, a federal grand jury indicted Mr. Douglas on two counts of distributing five grams or more of crack cocaine. Mr. Douglas pleaded guilty to one count of the indictment; he was sentenced to 151 months' imprisonment followed by four years of supervised release. The district court subsequently reduced his prison sentence to 130 months, and later to ninety-two months.

Mr. Douglas's term of supervised release commenced on November 1, 2011. However, in 2013, his probation officer reported that Mr. Douglas had violated court-imposed conditions of supervision. Consequently, on March 25, 2013, the government petitioned the district court to issue a warrant and recommended the revocation of supervised release. Mr. Douglas's probation officer then prepared an Amended Violation Report which cited ten specific infractions. The most serious of these was an "arrest[ ] by the Missouri Highway Patrol for new criminal activity" on March 14, 2013, wherein Mr. Douglas was found in possession of a controlled substance. R., Vol. III, at 10 (Sealed Am. Violation Report, filed Oct. 18, 2013). Based upon this "Grade A violation and [Mr. Douglas's] criminal history category of VI," the report computed an imprisonment range of thirty-three to forty-one months. *Id.* at 13.

At an October 2013 hearing on the matter, the government introduced testimony from Mr. Douglas's probation officer and the Missouri State Trooper who had arrested Mr. Douglas in March 2013. After hearing oral argument from

both parties, the district court determined that Mr. Douglas had violated the conditions of his supervised release and stated, "I intend to revoke it." *Id.*, Vol. II, at 69 (Hr'g Tr., dated Oct. 21, 2013).[1]  More specifically, the court concluded that a thirty-six-month sentence was appropriate and explained its reasoning, in relevant part, as follows:

> I believe the evidence reflects from Mr. Douglas a number of very troubling things:
>
> First of all, as to the Class A violation, . . . how he was charged in the Missouri court in reality perhaps understates his culpability.[2]  And I would feel differently if the evidence simply reflected that Mr. Douglas engaged in some very imprudent and also illegal behavior . . . , troubling as the event itself was, a 100-mile-an-hour chase through residential areas.  But the evidence leads me to believe that there was more afoot than that and that Mr. Douglas was in a situation in which he was engaging in drug distribution.  And that's based upon the scales, based upon the packaging, and based upon the fact there's absolutely no indication of any other individual who is otherwise responsible.  And Mr. Douglas of course is a Criminal History Category VI who was sentenced for drug distribution.  It's troublesome to me that he has, in my opinion, at that point in time fallen back into his old habits.  And in looking at the other violations here, the sort of technical violations [of supervision], they also reflect a person who has not taken sufficiently seriously the obligation to conform his favor [sic] to what he's required to do.  And that is troublesome.  Moreover, even what I heard him say today in his own statement, I really drew the conclusion he

---

[1]     Mr. Douglas exercised the opportunity to make a statement before the district court imposed sentence.

[2]     In the district court's view, "[there was] a pretty good argument that really [Mr. Douglas] should have been charged with possession with intent to distribute under Missouri law," which he was not.  R., Vol. II, at 59.

3

> was saying he was sorry he got caught as opposed to he was really sorry that he did whatever he did back in March.
>
> And I believe as a result of all of this the need to punish Mr. Douglas is there and that a sentence of three years' imprisonment is not out of proportion with the entirety of the circumstances that have been presented both in the evidence and in his criminal history. And as a result I think that sentence makes sense.

*Id.* at 71–72.

Mr. Douglas lodged no contemporaneous objection. At the conclusion of the hearing, he was remanded to the custody of the United States Marshal. This timely appeal followed.

## II

### A

Mr. Douglas contends that the district court committed procedural error by lengthening his term of imprisonment based on consideration of an impermissible factor specified in 18 U.S.C. § 3553(a)(2)(A): promoting punishment for the underlying offense of conviction. Because Mr. Douglas failed to object on this basis in the district court, we review this claim for plain error. *United States v. Mendiola*, 696 F.3d 1033, 1036 (10th Cir. 2012). Under that standard, we will reverse only if Mr. Douglas demonstrates "(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court may exercise discretion to correct the error if [4] it seriously affects the fairness, integrity, or public reputation of judicial

4

proceedings." *United States v. McGehee*, 672 F.3d 860, 876 (10th Cir. 2012) (internal quotation marks omitted). Failure to establish one or more of these elements is fatal to a claim on plain-error review. *See United States v. Romero*, 491 F.3d 1173, 1179 (10th Cir. 2007).

**B**

We ultimately decide to affirm the judgment of the district court, but in so doing, we take a different approach than that proposed by the parties. Their arguments on appeal focus on the third prong of plain-error review. However, we find it unnecessary to reach that stage in the analysis. Indeed, we harbor some doubt whether Mr. Douglas's challenge survives the first prong of plain-error review—*viz.*, we question whether the district court committed any error at all. Nonetheless, even assuming that it did so, we are confident that any such error was not "clear or obvious under current law," *see McGehee*, 672 F.3d at 876. Consequently, Mr. Douglas's claim of error fails to satisfy the second prong of the plain-error test.

Basing a sentence on an impermissible factor is a form of procedural error. *See United States v. Smart*, 518 F.3d 800, 803–04 (10th Cir. 2008). As is relevant here, "[b]efore deciding whether to revoke a term of supervised release and determining the sentence imposed after revocation, the district court must consider the factors set out in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)." *United States v. McBride*, 633 F.3d

1229, 1231 (10th Cir. 2011); *see* 18 U.S.C. § 3583(e). These factors are (1) "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1); (2) providing "adequate deterrence to criminal conduct," *id.* § (a)(2)(B); (3) "protect[ing] the public from further crimes of the defendant," *id.* § (a)(2)(C); (4) providing training, treatment, and care, *id.* § (a)(2)(D); (5) the sentencing ranges established by the United States Sentencing Guidelines ("U.S.S.G." or "the Guidelines"), *id.* § (a)(4); (6) the pertinent Sentencing Commission policy statements, *id.* § (a)(5); (7) the need to avoid unwarranted sentencing disparities, *id.* § (a)(6); and (8) restitution, *id.* § (a)(7). The relevant policy statements are listed in Chapter 7 of the Guidelines. *See United States v. Vigil*, 696 F.3d 997, 1002 (10th Cir. 2012).

Bearing the foregoing in mind, it is patent that the statutory scheme does not *require* sentencing courts to consider § 3553(a)(2)(A) in concert with the other enumerated factors. *See McBride*, 633 F.3d at 1231. Thus, when sentencing a defendant who has violated his terms of supervision, the district court need not focus upon "provid[ing] just punishment for the offense [of conviction]." *See* 18 U.S.C. § 3553(a)(2)(A).

The parties' arguments focus on this legal proposition and make much of the fact that the district court referred to "the need to punish Mr. Douglas," R., Vol. II, at 72, in its sentencing remarks. This "punish" language, reason the parties, indicates that the district court relied on § 3553(a)(2)(A) in revoking Mr.

Douglas's supervised-release term and fashioning his sentence and, in doing so, committed clear or obvious procedural error—*viz.*, error that satisfies the second prong of the plain-error test. We disagree.

Assuming for the moment that a district court is prohibited from considering § 3553(a)(2)(A) factors in revoking an offender's supervised-release term and imposing sentence on him, we are far from certain that the district court committed such error here. The district court never explicitly invoked § 3553(a)(2)(A) in its fleeting nod to punishment. Nor did it focus on Mr. Douglas's drug-trafficking offense of conviction as an independent variable in its sentencing calculus; it only alluded to that conviction in assessing the magnitude of Mr. Douglas's supervised-release misconduct. In particular, the court voiced the view that Mr. Douglas's supervised-release misconduct suggested that he had reverted back to his former pattern of drug-trafficking delict. *See* R., Vol. II, at 72 ("It's troublesome to me that he has . . . fallen back into his old [drug-related] habits."); *cf.* U.S.S.G. Ch. 7, pt. A, intro. cmt. (noting that "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator").

In addition, at least arguably, the district court's reference to punishment could be read as relating to the need to sanction Mr. Douglas—*not* for his offense of conviction, which would be within § 3553(a)(2)(A)'s purview, but for his

7

supervised-release misconduct, which violated the trust of the court. *See United States v. Contreras-Martinez*, 409 F.3d 1236, 1241 (10th Cir. 2005) (noting that a "violation of a condition of supervised release is a breach of trust . . . that is sanctioned"). Accordingly, we harbor no small measure of doubt whether the district court committed the challenged error in the first place. Put another way, we question whether Mr. Douglas has even satisfied the first prong of the plain-error test.

However, if we do assume that the district court considered the § 3553(a)(2)(A) factors in imposing a supervised-release revocation sentence on Mr. Douglas and that such consideration was error, we still would be hard-pressed to conclude that any such error was clear or obvious. Recent decisions issued by panels of this court indicate that the Tenth Circuit has not definitively resolved the question of whether it is error for a district court to consider § 3553(a)(2)(A) factors when revoking an offender's supervised release. *See United States v. Chatburn*, 505 F. App'x 713, 717 (10th Cir. 2012); *United States v. Lockhart*, 421 F. App'x 877, 880 n.1 (10th Cir. 2011). In *Lockhart*, the panel stated that a "district court is not required to consider [§ 3553(a)(2)(A) factors] when imposing a sentence upon revocation of supervised release. However, the fact that the district court did consider these factors does *not* render the sentence plainly unreasonable." 421 F. App'x at 880 n.1 (emphasis added) (citation omitted). Moreover, the Supreme Court has not yet spoken to the issue.

8

This lack of controlling precedent on the question creates a "fundamental" problem for Mr. Douglas in his effort to establish that the district court clearly or obviously erred. *United States v. Schneider*, 704 F.3d 1287, 1304 (10th Cir.) (Holmes, J., concurring, joined by Martinez, J.), *cert. denied*, --- U.S. ----, 133 S. Ct. 2868 (2013); *see, e.g.*, *United States v. DeChristopher*, 695 F.3d 1082, 1091 (10th Cir. 2012) ("In general, for an error to be contrary to well-settled law, either the Supreme Court or this court must have addressed the issue." (internal quotation marks omitted)). Furthermore, in *Chatburn*, the panel observed that "[t]he circuits are divided on whether consideration of a § 3553(a)(2)(A) factor is error" and concluded that "the law [was] sufficiently unsettled," such that it could not conclude that any error regarding the consideration of § 3553(a)(2)(A) factors was clear or obvious (i.e., plain). 505 F. App'x at 717. And, "[o]ur circuit precedent has repeatedly noted that a circuit split is strong evidence that an error is not plain." *United States v. Story*, 635 F.3d 1241, 1248 (10th Cir. 2011).

Lastly, there is no alternative ground upon which we might otherwise conclude that the district court's statutory "interpretation was clearly erroneous," *United States v. Poe*, 556 F.3d 1113, 1129 (10th Cir. 2009) (internal quotation marks omitted). On its face, § 3583(e) does not expressly prohibit district courts from considering § 3553(a)(2)(A) factors; it simply does not require them to do so. In sum, even if the district court here considered the § 3553(a)(2)(A) factors in imposing a supervised-release revocation sentence on Mr. Douglas, and such

9

consideration was error, we conclude that it was not clear or obvious error. Consequently, Mr. Douglas cannot satisfy the second prong of the plain-error test, and we are constrained to uphold the district court's order.[3]

## III

For the foregoing reasons, we **AFFIRM** Mr. Douglas's sentence.


Entered for the Court


JEROME A. HOLMES
Circuit Judge

---

[3] For the reasons explicated above, we consider it unnecessary to reach (as the parties do) the third prong of the plain-error test. But, even assuming that we were to reach this phase of the analysis, we would arrive at the same result. In other words, we would affirm the district court in any event because, insofar as it committed any clear or obvious error, that purported error did not affect Mr. Douglas's substantial rights. In brief, we are satisfied that the thrust of the district court's reasoning relates to permissible factors. To the extent that the court erred in looking to § 3553(a)(2)(A) factors, it did so only to bolster its reasoning as to those permissible factors. *See, e.g.*, 18 U.S.C. § 3583(e) (directing sentencing courts to consider § 3553(a)(1), which in turn permits review of "the nature and circumstances of the offense and the history and characteristics of the defendant"); *see generally* U.S.S.G. Ch. 7, pt. A, intro. cmt. There is no reasonable probability that Mr. Douglas would have received a different, lesser sentence.

10