**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-2846
_____

UNITED STATES OF AMERICA


v.


JANET SONJA SCHONEWOLF,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No.: 2-13-cr-00037-001)
District Judge: Honorable John R. Padova
_____

Argued April 19, 2018

Before: GREENAWAY, JR., RENDELL, and FUENTES,
*Circuit Judges*

(Opinion Filed: October 4, 2018)

Leigh M. Skipper
 Assistant Federal Defender
Brett G. Sweitzer
 Assistant Federal Defender
 Chief of Appeals
Robert Epstein
 Assistant Federal Defender
Jacob Schuman          [ARGUED]
 Research and Writing Attorney
Federal Community Defender Office
for the Eastern District of Pennsylvania
Suite 540 West – Curtis Center
601 Walnut Street
Philadelphia, PA 19106
       *Counsel for Appellant*

William M. McSwain
 United States Attorney
Robert A. Zauzmer          [ARGUED]
 Assistant United States Attorney
 Chief of Appeals
Sarah L. Grieb
 Assistant United States Attorney
Office of the United States Attorney
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
       *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

FUENTES, *Circuit Judge*.

We are asked to determine whether referencing a criminal defendant's need for drug rehabilitation is appropriate when imposing a prison sentence following the revocation of supervised release. Appellant is Janet Sonja Schonewolf, a repeat offender struggling with heroin dependency. Following her most recent arrest, the District Court revoked Schonewolf's supervised release and sentenced her to 40 months' imprisonment, an upward variance over the Sentencing Guidelines range. Schonewolf claims that the District Court imposed this sentence based on her need for drug rehabilitation, in violation of the Sentencing Reform Act (the "Act")[1] and the Supreme Court's ruling in *Tapia v. United States*.[2] We disagree, and hold that her sentence did not violate the Act and *Tapia*. We will therefore affirm.

## I.    Factual Background

The facts of this case have become far too common. Schonewolf has spent much of her life in the throes of addiction. Both of her parents were addicts, foreshadowing her own life. Her father was a methamphetamine user who encouraged her to sell diet pills in school on his behalf. Her mother was a food addict who weighed over 500 pounds at the time of her death. At age 14 Schonewolf began smoking marijuana, and by age 15 she left her home and dropped out of high school. Shortly thereafter, Schonewolf developed a drinking problem and attempted suicide several times before being diagnosed with bipolar disorder. Schonewolf also

---

[1] 18 U.S.C. § 3551 *et seq.*
[2] 564 U.S. 319 (2011).

admits having used crack cocaine and methamphetamines when she was younger.

Schonewolf's use of opiates began with the use of prescription painkillers. Specifically, she was prescribed Percocet for pain stemming from back injuries sustained in a car accident, followed by a fentanyl patch. Schonewolf became addicted to opiates and, following her doctor's retirement, began using heroin to satisfy her addiction.

## A.    Schonewolf's Prior Offense

Predictably, all of this led to trouble with the law. In 2010, Schonewolf was pulled over in Utah and admitted to having approximately twelve pounds of methamphetamine in the trunk of her car. Evidently, her father had given her $88,000 and requested she buy drugs in Nevada and bring them to him in Pennsylvania. Ultimately, Schonewolf pled guilty to one count of possessing methamphetamine with intent to distribute. The District Court granted a downward variance from the Sentencing Guidelines and sentenced Schonewolf to time served, followed by 60 months' supervised release.

## B.    Schonewolf's Instant Offense

After several years of progress on supervised release, Schonewolf suffered a relapse.[3] She began using heroin again

---

[3] Relapse is a common occurrence in the process of drug addiction recovery, leading some to argue it is best understood as a chronic illness, which may require continuing care throughout the sufferer's life. *See* A. Thomas McLellan et al., *Drug Dependence, a Chronic Mental Illness: Implications for Treatment, Insurance, and Outcomes Evaluation*, 284 JAMA 1689 (2000).

and was caught attempting to purchase the drug. This resulted in two Pennsylvania misdemeanor charges. Additionally, these charges violated the terms of Schonewolf's supervised release.

Schonewolf's probation officer filed a Violation of Supervised Release petition in the District Court. One month later, however, the officer withdrew the petition, noting that Schonewolf was involved in a detox program. Unfortunately, Schonewolf suffered an overdose and left treatment. As a result, her probation officer refiled the petition and the District Court convened a revocation hearing. At that hearing, the Government indicated that Schonewolf was again in treatment and making progress, so the District Court adjourned for a month. When the District Court reconvened, it sentenced Schonewolf to one day in prison, followed by her pre-existing term of supervised release.

In October 2016, Schonewolf was found to be selling heroin out of her house. She admitted to have been doing so for six to seven months. Schonewolf pled guilty to several drug charges and was sentenced to two to four years' imprisonment by the state court. She is currently serving that sentence. Based on this conduct, Schonewolf's probation officer also filed a new Violation of Supervised Release.

## II.     Procedural History

The District Court convened a revocation hearing under 18 U.S.C. § 3583(e)(3) regarding Schonewolf's violation of a

term of supervised release on August 15, 2017.[4]  The Guidelines range for Schonewolf's sentence was 24 to 30 months' imprisonment.  The Government advocated for an upward variance to 48 months, justifying this request by the fact that Schonewolf had previously benefitted from a lesser sentence because she had promised to stop using drugs.  The Government also relied on the Guidelines, pointing out that under Guideline § 7B1.4, application note 4, the Court was empowered to depart upward because Schonewolf had

---

[4] While the Government argues that § 3583(g) is the operative framework here because Schonewolf's violation involved a finding that she possessed a controlled substance, the record indicates otherwise.  Indeed, the District Court's order revoking Schonewolf's supervised release states specifically that the revocation is ordered "pursuant to 18 U.S.C. § 3583(e)(3)."  JA3.  In any event, even if the Government were correct and § 3583(g) was the vehicle through which Schonewolf's supervised release was revoked, this is a distinction without a difference as both require the same consideration of the § 3553(a) factors in determining the sentence to impose.

Discretionary revocation under § 3583(e) requires district courts to consider the factors present in § 3553(a) in crafting a sentence.  *United States v. Doe*, 617 F.3d 766, 772 (3d Cir. 2010).  Mandatory revocation under § 3583(g) "does not expressly require consideration of the § 3553(a) factors," but similarly "does not prohibit the sentencing court from doing so."  *Id.*  However, in *United States v. Thornhill*, we held that the § 3553(a) factors must be considered in imposing a sentence under 18 U.S.C. § 3583(g).  759 F.3d 299, 309 (3d Cir. 2014).

6

received a downward departure in 2012. Schonewolf requested a 24-month sentence, based on, among other factors: (1) her long history of struggles with bipolar disorder and substance abuse; (2) the fact that her sales were solely to finance her own habit and did not involve violence; and (3) her existing two to four year state sentence, which she asserted would give her time to complete drug treatment.

The District Court ultimately sentenced Schonewolf to 40 months' imprisonment to run consecutively to her state sentence. This was 10 months above the top of the Guidelines range. To justify this sentence, the District Court said:

> "I mean, we—you were granted a significant downward departure [at] sentencing. You were granted a significant mercy at the time of your first violation and nonetheless, I mean, your behavior has just grown more and more severe, worse.
>
> And I—you know, I have reached a conclusion that you are a significant danger to yourself, you're a significant danger to those who have lived with you, and you're a significant danger to society. And the last step we have in order to give you a fighting chance to recover from whatever addictions you have is to—is to limit your contact with the outside world for a significant period of time.
>
> As I said we had had great hope for you. I am thoroughly convinced that [the] United States has done—has gone way out in order to do

what it could to help you for a significant period of time, but that hasn't worked. Now, I have decided to grant an upward variance. And the basis for the upward variance is Section 7B 1.4. And we take special note of Application Note number 4 which points out essentially what the government has pointed out as a basis for an upward variance from the range here."[5]

Schonewolf now appeals her sentence.[6]

## III. Standard of Review

On appeal, Schonewolf argues that the District Court violated the Act by sentencing her to a term of imprisonment to promote her rehabilitation. She did not raise this argument as an objection at her sentencing, and thus it is not preserved for appeal.[7] We review unpreserved claims for plain error.[8] To

---

[5] Transcript of Violation of Supervised Release Hearing as to Janet Sonja Schonewolf held on Aug. 15, 2017 at 21, *United States v. Schonewolf*, No. 2:13-cr-00037-JP-1 (E.D. Pa. Sept. 22, 2017), ECF No. 27.

[6] The District Court had jurisdiction over this case under 18 U.S.C. §§ 3231 and 3583. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[7] *United States v. Miller*, 833 F.3d 274, 283 (3d Cir. 2016) ("A party may preserve a claim of error by informing the court—when the court ruling or order is made or sought—of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that objection." (quoting Fed. R. Crim. P. 51(b))).

[8] *United States v. Berry*, 553 F.3d 273, 279 (3d Cir. 2009) (citing Fed. R. Crim. P. 52(b)).

8

be entitled to relief under a plain error standard, "a defendant must show: (1) error, (2) that is plain or obvious, and (3) that affects a defendant's substantial rights."[9] When those three prongs are met, this Court may exercise its discretion to grant relief, but only if "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."[10]

## IV. Schonewolf's Sentencing Reform Act Claim

In 1984, Congress passed the Act as part of the Comprehensive Crime Control Act.[11] In the Act, Congress admonishes courts to, in considering the length of a prison sentence, "consider the factors set forth in [18 U.S.C.] section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation*."[12] The Supreme Court interpreted this section of the Act in *Tapia v. United States*, and concluded that "§ 3582(a) tells courts that they should acknowledge that imprisonment is not suitable for the purpose of promoting rehabilitation."[13] The Court thus held that "the Sentencing Reform Act precludes federal courts from

---

[9] *Id.* (quoting *United States v. Goodson*, 544 F.3d 529, 539 (3d Cir. 2008)); *see also Johnson v. United States*, 520 U.S. 461, 466–67 (1997) (citing *United States v. Olano*, 507 U.S. 725, 732 (1993)).

[10] *Johnson*, 520 U.S. at 467 (quotations omitted).

[11] *United States v. Gozlon-Peretz*, 894 F.2d 1402, 1403 n.2 (3d Cir. 1990).

[12] 18 U.S.C. § 3582(a) (emphasis added).

[13] 564 U.S. at 327.

imposing or lengthening a prison term in order to promote a criminal defendant's rehabilitation."[14]

Prior to *Tapia*, this Court decided *United States v. Doe*, where we held that it did not violate the Act to "set[] the duration of [a defendant's] post-revocation incarceration based, in part, on his need for drug rehabilitation."[15]  In so doing, we explained that "the plain language and operation of the statute governing post-revocation sentencing, 18 U.S.C. §§ 3583(e) and (g), permits a district court to consider medical and rehabilitative needs in imposing a term of post-revocation imprisonment[.]"[16]

Thus, there appears to be a facial distinction between *Tapia*, decided in the context of a post-conviction sentence, and this case, where Schonewolf's sentence was imposed post-violation, the same procedural posture present in *Doe*.  This presents the question of whether *Tapia* effectively overruled *Doe* and applies even in cases where a sentence is imposed post-violation under § 3583.[17]

---

[14] *Id.* at 321.

[15] 617 F.3d at 774.

[16] *Id.* at 770.

[17] The parties agree that *Tapia* has abrogated the rule in *Doe*. Nevertheless, because the legality of the District Court's consideration of rehabilitation in crafting Schonewolf's sentence is "properly before the court," we are not bound by "the particular legal theories advanced by the parties," but may "identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 99 (1991).  Thus, we now consider the relationship between *Tapia* and *Doe* to determine which governs.

10

## A. Interplay of *Tapia* and *Doe*

Even before *Tapia*, this Circuit did not permit post-conviction sentences to be tailored to rehabilitation. In *United States v. Manzella*, we held that "[i]t is the policy of the United States Congress, clearly expressed in law, that defendants not be sent to prison or held there for a specific length of time for the sole purpose of rehabilitation."[18] Our review of the record convinced us that "the circumstances of the sentencing hearing clearly indicate that the District Court sentenced [defendant] to a prison term of 30 months for rehabilitative purposes" because the sentence was designed to give sufficient time for the defendant to complete the Bureau of Prison's 500-hour drug treatment program.[19] Thus, we concluded that the District Court erred in violating § 3582(a).[20]

After *Manzella*, we decided *Doe*. As mentioned, *Doe* held that it did not violate the Act to set a post-revocation sentence based, in part, on a defendant's need for rehabilitation.[21] We reconciled this with the rule in *Manzella* by noting "certain pivotal distinctions between the statutes governing post-conviction sentencing and those governing post-revocation sentencing."[22] Specifically, post-conviction imprisonment is limited by both §§ 3553(a)(2)(D) and 3582(a).[23] The former provides that the District Court should

---

[18] 475 F.3d 152, 161 (3d Cir. 2007).
[19] *Id.*
[20] *Id.* at 153, 161.
[21] *Doe*, 617 F.3d at 770.
[22] *Id.*
[23] *See id.*

consider "the need . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."[24] The latter adds the requirement that a sentence to a term of imprisonment must be crafted "recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation."[25] Read together, post-conviction sentences must be crafted to consider a need for medical care and correctional treatment, while recognizing that rehabilitation is not a justification for a prison sentence.[26] By contrast, we said that post-revocation sentences under § 3583 (e) and (g) were not subject to § 3582(a).[27] Absent this requirement, we held that a District Court may consider rehabilitation in crafting a post-revocation prison sentence.[28]

Then came *Tapia*. In *Tapia*, the Supreme Court firmly held that "[s]ection 3582(a) precludes sentencing courts from imposing or lengthening a prison term to promote an offender's rehabilitation."[29] The Court articulated multiple reasons for this. It first noted the plain text of § 3582(a) provides "clarity" as to the operative rule.[30] "Under standard rules of grammar, § 3582(a) says: A sentencing judge shall recognize that imprisonment is not appropriate to promote rehabilitation . . .

---

[24] *Id.* (quoting § 3553(a)(2)(D)).

[25] 18 U.S.C. § 3582(a).

[26] *See Doe*, 617 F.3d at 770–71.

[27] *Id.* at 771. Consideration of the 18 U.S.C. § 3553(a) factors was allowed, but not required until *Thornhill* was decided four years later. *See supra* note 4.

[28] *Doe*, 617 F.3d at 774.

[29] 564 U.S. at 332.

[30] *Id.* at 326.

when determining *both* whether to imprison an offender *and* what length of term to give him."[31]  Second, the Court found the "statutory silence" as to any provisions giving courts the authority to ensure defendants do participate in rehabilitative programs "[e]qually illuminating."[32]  This is because, where Congress intended rehabilitation to be an aim of the sentence— *i.e.* probation or supervised release—it gave courts the authority to order a defendant's participation in rehabilitative programs.[33]  When it comes to prison sentences, however, "courts do not have this authority."[34]  This "indicates that Congress did not intend that courts consider offenders' rehabilitative needs when imposing prison sentences."[35]

Finally, legislative history confirms Congress' intent that rehabilitation not be considered in sentencing a defendant to prison.[36]  The Senate Report regarding the Act noted that "almost everyone involved in the criminal justice system now doubts that rehabilitation can be induced reliably in a prison setting."[37]  It is for this reason, the Report states, that 18 U.S.C. § 3582(a) "specifies, in light of current knowledge, that the judge should recognize . . . that imprisonment is not an appropriate means of promoting correction and rehabilitation."[38]

---

[31] *Id.* at 328 (emphasis in original).

[32] *Id.* at 330.

[33] *Id.*

[34] *Id.* at 331.

[35] *Id.*

[36] *Id.* at 331–32.

[37] S. REP. NO. 98-225, at 38 (1983).

[38] *Id.*, at 119 (internal quotations omitted).

This brings us to the issue at hand, whether *Tapia* has any import here, where Schonewolf was sentenced to a term of incarceration following the revocation of her supervised release. We now join our sister circuits in holding that *Tapia* applies to post-revocation prison sentences.[39] In doing so, we

---

[39] *United States v. Molignaro*, 649 F.3d 1, 5 (1st Cir. 2011) (Souter, J.) ("We feel bound to conclude that rehabilitation concerns must be treated as out of place at a resentencing to prison, just as ordering commitment initially."); *United States v. Lifshitz*, 714 F.3d 146, 150 (2d Cir. 2013) ("*Tapia* applies upon revocation of supervised release, as well as at the time of initial sentencing."); *United States v. Bennett*, 698 F.3d 194, 198 (4th Cir. 2012) ("We thus hold that *Tapia* applies to the revocation context too."); *United States v. Garza*, 706 F.3d 655, 657 (5th Cir. 2013) ("The Government concedes that *Tapia* applies to revocation sentences, and we agree."); *United States v. Deen*, 706 F.3d 760, 766 (6th Cir. 2013) ("[I]t appears inescapable that *Tapia* applies to revocation sentencing under § 3583(e)(3), just as it does to initial sentencing after conviction under § 3582(a)."); *United States v. Taylor*, 679 F.3d 1005, 1006 (8th Cir. 2012) ("*Tapia* applies upon revocation of supervised release as well as at an initial sentencing."); *United States v. Grant*, 664 F.3d 276, 280 (9th Cir. 2011) ("We conclude that *Tapia* applies to imprisonment regardless of whether imprisonment is imposed at initial sentencing or on revocation."); *United States v. Mendiola*, 696 F.3d 1033, 1043 (10th Cir. 2012) (Gorsuch, J., concurring) ("[I]t follows ineluctably (plainly) that § 3582(a) prohibits a court from relying on rehabilitation considerations *any* time it chooses to send someone to . . . prison, whether as part of an initial sentence (as in *Tapia*) or as part of a sentence issued after a probation revocation (as in our case)."); *United States v.*

---

14

recognize that *Tapia* effectively overruled our decision in *Doe*.[40]  Put succinctly, post-revocation sentences under § 3583 (e) and (g) are subject to the requirements of § 3582(a) of the Act.  Our rationale for this is simple: the reasons the Court gave for its holding in *Tapia* apply with equal force to post-revocation prison sentences.

First, the plain text of § 3582(a) indicates that it should also apply to post-revocation prison sentences.  The statute refers only to the sentence of "imprisonment," not the

*Vandergrift*, 754 F.3d 1303, 1309 (11th Cir. 2014) ("This court has not decided whether *Tapia* applies in the context of resentencing upon the revocation of supervised release.  But we agree with our sister circuits and today hold that it does.").
[40] While *Doe*, as a published decision of a prior panel of this Court, would normally be beyond our authority to overrule, *see* 3d Cir. Internal Operating P. 9.1, in light of intervening Supreme Court case law, we may reevaluate our precedent. *United States v. Berrios*, 676 F.3d 118, 126 n.1 (3d Cir. 2012) (citing *Reich v. D.M. Sabia Co.*, 90 F.3d 854, 858 (3d Cir. 1996)).  Nor are we alone in being the only circuit to recognize that *Tapia* has effectively overruled prior circuit-level precedent permitting the consideration of rehabilitation in crafting a post-revocation prison sentence.  *See Mendiola*, 696 F.3d at 1042 ("Consequently, we conclude that *Tapia* has effectively invalidated the majority's decision in *Tsosie*."); *Vandergrift*, 754 F.3d at 1309 ("[W]e recognize that *Tapia* abrogates our holding in *United States v. Brown*, where we stated that 'a court may consider a defendant's rehabilitative needs when imposing a specific incarcerative term following revocation of supervised release.'" (citation omitted)).

15

procedural posture by which such a sentence is imposed.[41] Intuitively this makes sense. If a sentence of incarceration in prison is "not an appropriate means of promoting correction and rehabilitation," why should it matter whether a defendant finds herself there immediately following her conviction or after the revocation of a term of supervised release?[42] The obvious answer is it does not. The realities of her confinement—and its hostility towards her rehabilitation—are identical.

Second, Congress has not authorized courts to require participation in rehabilitative programs in prison. Once sentenced to a prison term, courts lack any control over what, if any, treatment programs a defendant may participate in— "decisionmaking authority rests with the [Bureau of Prisons]."[43] This is true whether the defendant is sentenced post-conviction or post-revocation.[44]

Extending *Tapia* to include post-revocation sentences is also consistent with the Congressional intent of § 3582(a). "[D]ecades of experience with indeterminate sentencing, resulting in the release of many inmates after they completed correction programs, had left Congress skeptical that 'rehabilitation can be induced reliably in a prison setting.'"[45] Once again, this prison setting is identical whether a defendant is sentenced to a term of imprisonment following her

---

[41] 18 U.S.C. § 3582(a).

[42] *See id.*

[43] *Tapia*, 564 U.S. at 331.

[44] *See* 18 U.S.C. § 3621(e).

[45] *Tapia*, 564 U.S. at 331-32 (quoting S. REP. NO. 98-225, at 23).

conviction or post-revocation. Thus, Congress' rationale applies with equal force to post-revocation prison sentences as it does to post-conviction prison sentences.

## B. Standard of Review for Potential Violations of *Tapia*

Having determined that *Tapia* does apply to prison sentences imposed post-revocation, we must now consider the standard to be applied in considering whether a post-revocation sentence violates *Tapia* by impermissibly contemplating rehabilitation. While there is apparent unanimity as to *Tapia*'s application to post-revocation sentences, a circuit split has emerged regarding the standard to be applied in considering whether there has been a *Tapia* violation.

On one hand, the Seventh, Ninth, Tenth, and Eleventh Circuits impose a stringent standard by which seemingly any consideration of rehabilitation is impermissible under *Tapia*.[46]

---

[46] *United States v. Spann*, 757 F.3d 674, 675 (7th Cir. 2014) ("[I]n basing [defendant's] sentence *even in part* on that consideration [learning lawful job skills] [the District Court] was violating the rule of *Tapia* . . . ." (emphasis added)); *United States v. Joseph*, 716 F.3d 1273, 1281 n.10 (9th Cir. 2013) (dictum) ("The district court's Statement of Reasons seems to reflect that *rehabilitation may have been a factor* in the court's sentencing decision." (emphasis added)); *United States v. Thornton*, 846 F.3d 1110, 1116 (10th Cir. 2017) (applying a rule where *Tapia* is violated if rehabilitation is one of many considered factors because "[a] rule requiring reversal only when rehabilitation is the sole motivation would not make sense" because "there will almost always be some valid reasons advanced by the district court for imposing the

17

In the view of these courts, *Tapia* is violated wherever rehabilitation is given any weight in the decision to impose or lengthen a prison sentence.[47] This, however, seems to leave open the possibility that a District Court may make reference to rehabilitation and still satisfy *Tapia* in certain circumstances where it is clear that the discussion of rehabilitation carried zero weight, *i.e.*, the sentence was not based, even in de minimis part, on a desire to foster rehabilitation.

On the other hand, the First, Second, Fourth, Fifth, Sixth, and Eighth Circuits have articulated a narrower standard, requiring that rehabilitation must have been the determining factor in a prison sentence before finding a *Tapia* violation.[48] Under this standard, rehabilitation may be a factor

---

sentence issued"); *Vandergrift*, 754 F.3d at 1310 [11th Cir.] ("[W]e hold that *Tapia* error occurs where the district court *considers* rehabilitation when crafting a sentence of imprisonment.").

[47] *See*, *e.g.*, *Vandergrift*, 754 F.3d at 1310 (*Tapia* error occurs in considering rehabilitation as one of many factors in selecting a prison sentence); *Thornton*, 846 F.3d at 1116 (same).

[48] *See United States v. Del Valle-Rodrigues*, 761 F.3d 171, 174 (1st Cir. 2014) ("In the absence of a causal relationship, courts have hesitated to find *Tapia* error. Where, however, the record indicates that rehabilitative concerns were the driving force behind, or a dominant factor in, the length of a sentence, courts have found *Tapia* error."); *Lifshitz*, 714 F.3d at 150 [2d Cir.] ("The sentencing colloquy demonstrates that the district court's *primary considerations* in sentencing [defendant] were 'promoting respect for the law and protecting the public from further crimes of this defendant.' While the district court also considered [defendant's] need for medical care, there is no

granted some weight in selecting a prison sentence, so long as it is not the primary or dominant consideration.[49]

On appeal, Schonewolf argues that the former standard should apply. Alternatively, she asserts that the standard does not matter because under either standard the District Court

---

indication in the record that the district court *based* the length of [defendant's] sentence on his need for treatment." (emphasis added)); *Bennett*, 698 F.3d at 201 [4th Cir.] (refusing to find error under *Tapia* where "[defendant's] rehabilitative needs clearly constituted only *a minor fragment* of the court's reasoning." (emphasis added)); *Garza*, 706 F.3d at 660 [5th Cir.] ("Our limited precedent post-*Tapia* has described the distinction between legitimate commentary and inappropriate consideration as whether rehabilitation is a 'secondary concern' or 'additional justification' (permissible) as opposed to a 'dominant factor' (impermissible) informing the district court's decision."); *Deen*, 706 F.3d at 768 [6th Cir.] ("Trouble [under *Tapia*] only comes when a court imposes or lengthens a sentence 'to enable an offender to complete a treatment program or otherwise to promote rehabilitation' inside a prison's walls.") (quoting *Tapia*, 564 U.S. at 335); *United States v. Replogle*, 678 F.3d 940, 943 (8th Cir. 2012) ("We are not convinced that the court's fleeting reference to whether [defendant] might be 'treated better somewhere else' demonstrates an obvious violation of § 3582(a) and the holding of *Tapia*.").

[49] *See*, *e.g.*, *Lifshitz*, 714 F.3d at 150 (finding no *Tapia* error where rehabilitation was not a primary factor in sentence selection); *Garza*, 706 F.3d at 660 (finding no *Tapia* error where rehabilitation was not the dominant factor in sentence selection).

19

erred. We think the second, narrower standard ought apply to post-revocation sentences, just as we have applied it to post-conviction sentences.[50] It is our view that this approach tracks *Tapia* more closely.

In reversing the judgment affirming the sentence in *Tapia*, the Supreme Court determined that the District Court erred in "indicat[ing] that [Defendant] should serve a prison term long enough to qualify for and complete [the Bureau of Prison's Residential Drug Abuse Program]."[51] This is the paradigmatic example of how a District Court's sentence may violate the Act—when it is imposed or lengthened to provide the opportunity to further a rehabilitative aim. Importantly, the opinion specifically left open the door for a District Court to "discuss[] the opportunities for rehabilitation within prison or the benefits of specific treatment or training programs."[52]

Thus, we think the better reading of *Tapia* would only find error where the record suggests "that the court may have calculated the length of [a defendant's] sentence to ensure that she receive[s] certain rehabilitative services."[53] We have already held that *Tapia* cautions that "courts cannot impose or lengthen a prison term *merely* to promote an offender's

---

[50] *See United States v. Zabielski*, 711 F.3d 381, 392 (3d Cir. 2013) (declining to find *Tapia* violation where statements regarding rehabilitation did "not show that the District Court imposed a longer sentence to ensure that [defendant] received the treatment that he needed").

[51] *Tapia*, 564 U.S. at 321–22

[52] *Id.* at 334.

[53] *Id.* at 334–35.

rehabilitation."[54] "This assuredly does not mean, however, that judges are prohibited from mentioning rehabilitation during the sentencing hearing."[55] A lower threshold would run afoul *Tapia* and risk a chilling effect on district courts "discussing the opportunities for rehabilitation within prison," a subject that "a court properly may address."[56]

## C. Application to Schonewolf

With the proper framework in mind, we must now consider whether the District Court impermissibly imposed or lengthened Schonewolf's sentence for rehabilitative ends in violation of the Act and *Tapia*. Schonewolf points to numerous statements made by the District Court that she alleges evidence that it impermissibly relied on rehabilitation in crafting its sentence. She asserts the District Court's comments were addiction-centric and "framed the choice [of sentence] in terms of treating her addiction."[57] Moreover, Schonewolf cites numerous examples of the District Court expressing concern for Schonewolf's behavior being harmful to herself.[58]

---

[54] *Zabielski*, 711 F.3d at 391 (emphasis added); *see also Del Valle-Rodrigues*, 761 F.3d at 175 (rehabilitation must be "dominant factor" for *Tapia* violation to be found); *Garza*, 706 F.3d at 660 (same); *Lifshitz*, 714 F.3d at 150 (finding no *Tapia* violation where rehabilitation was not a "primary consideration[]" in sentence);

[55] *Zabielski*, 711 F.3d at 391.

[56] *Tapia*, 564 U.S. at 334.

[57] Appellant Br. at 22.

[58] Specifically, Schonewolf cites the following: (1) in soliciting comments at sentencing from the Probation Office, the District Court asked "What's the best for [Schonewolf] under these

21

Schonewolf draws particular attention to the District Court's comment that "the last step we have in order to give you a fighting chance to recover from whatever addictions that you have is to – is to limit your contact with the outside world for a significant period of time."[59]  She argues this is evidence that the District Court was sentencing her in an effort to aid in her rehabilitation from drug addiction.

Despite Schonewolf's arguments to the contrary, our review of the record finds no *Tapia* error in the District Court's sentence.  In viewing the record as a whole, it is clear that the District Court's decision to impose a prison sentence, and what length of sentence to impose, were made independently of any discussion of Schonewolf's drug addiction and the potential for sobriety.    Schonewolf's sentence was not based on rehabilitation but, instead, on past lenity.  On this, the District Court was explicit: "I have decided to grant an upward variance.  And the basis for the upward variance is Section 7B 1.4.  And we take special note of Application Note number 4 which points out essentially what the government has pointed out as a basis for an upward variance from the range here."[60]

circumstances?," Appellant Br. at 22; (2) the District Court opined that Schonewolf needed "to be contained not only for the benefit of society, but . . . for her own benefit," *id.*, and that "not only is she a danger to society, she's also a significant danger to herself," *id.*; (3) in addressing Schonewolf, the District Court told her "I have reached a conclusion that you are a significant danger to yourself, you're a significant danger to those who have lived with you, and you're a significant danger to society," *id.*

[59] *Id.* at 22–23.

[60] Appellant Br. at 10.

This is a reference to United States Sentencing Guidelines § 7B1.4, application note 4, which provides that "[w]here the original sentence was the result of a downward departure . . . an upward departure may be warranted."[61]

Moreover, while Schonewolf is certainly correct that the District Court did make numerous references to her drug addiction and its hope that she discontinue her drug use, she is mistaken that this is error. *Tapia* itself is illustrative. There, the Court found error because the District Court clearly tailored the length of its sentence to allow the defendant to be in prison for a sufficient amount of time to complete a specific drug rehabilitation program.[62] Indeed, the District Court said as much, stating that one factor in the 51-month sentence was "so she is in long enough to get the 500 Hour Drug Program."[63]

In contrast, in *Zabielski*, this Court declined to find a sentence violated *Tapia* where the District Court said "one reason why I think that incarceration at this point in time is necessary is the fact that you don't seem to be able to live up to the conditions that you need to maintain in order to keep yourself sober and on your medications."[64] This does not violate *Tapia* because—while it assuredly discusses rehabilitation—"it does not show that the District Court imposed a longer sentence to ensure that [the defendant] received the treatment that he needed."[65] Similarly, there is no

---

[61] U.S. Sentencing Guidelines Manual § 7B1.4, cmt. n.4 (U.S. Sentencing Comm'n 2016).
[62] *Tapia*, 564 U.S. at 334–35.
[63] *Id.* at 322.
[64] 722 F.3d at 391.
[65] *Id.*

indication that the District Court specifically tailored its sentence length to any particular rehabilitation program, nor that it imposed a longer sentence to ensure Schonewolf received drug treatment.

Accordingly, we hold that Schonewolf's sentence did not violate the Sentencing Reform Act or *Tapia*. Given that Schonewolf's sentence was not legally erroneous, she cannot meet her burden of establishing plain error.

## V.    Conclusion

For the reasons stated above, we will affirm the order of the District Court.