NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 23-1006
_____

UNITED STATES OF AMERICA

v.

DION WILLIAMS,
                                  Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Criminal No. 2-11-cr-00156-001)
District Judge: Honorable Stephanie L. Haines

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on February 9, 2024

Before: HARDIMAN, SCIRICA, and RENDELL, *Circuit Judges.*

(Filed: August 9, 2024)

_____

OPINION*

_____

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Dion Williams pleaded guilty to conspiracy to distribute cocaine, assault of an officer of the United States, and possession and discharge of a firearm during and in relation to a crime of violence. He was sentenced to twenty years' imprisonment. Because Williams committed these offenses while on supervised release for a previous drug trafficking conviction, the District Court revoked his supervision and imposed a sixty-month term of imprisonment consecutive to his sentence for the new offenses. Williams now argues that his revocation sentence is procedurally and substantively unreasonable. We disagree and will affirm.

I.

We write primarily for the Parties and recite only the facts essential to our decision. Dion Williams pleaded guilty to drug trafficking offenses and in April 2013 was sentenced to fifty-four months' imprisonment, followed by eight years of supervised release. Williams began his supervision in July 2016.

On June 16, 2020, Williams was indicted on one Count of conspiring to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(ii).

In the early morning hours of June 18, 2020, a team of Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") officers executed a search warrant for Williams's residence in Pittsburgh, Pennsylvania. The search team used a bearcat vehicle—a large, armored vehicle equipped with lights, sirens, and a public address ("PA") system—to approach the residence. The ATF officers wore uniforms and made

2

their arrival known in various ways. They knocked on the doors and windows of Williams's residences and announced their presence. The ATF officers activated the bearcat's emergency lights and used its PA system to announce that police were present with a warrant. The ATF officers also deployed two flash bang devices.

Along with other officers, ATF Officer Chris Wiegner approached one of the two side entrances of the residence. After several officers yelled "police search warrant," Officer Wiegner used a ram to breach one of the doors, and the officers deployed another flash bang device. The door then swung shut, and Officer Wiegner had to retrieve his ram to reopen it. Officer Wiegner again yelled "police search warrant," breached the door, and saw Williams inside pointing a firearm at him. Appx 286. Williams fired at Officer Wiegner, hitting him in the shoulder. Approximately twenty-three seconds elapsed between Officer Wiegner's first attempt to open the door and the shooting. Officer Wiegner was taken to the hospital and later testified that he struggles with ongoing physical and mental injuries sustained during the shooting.

Williams was charged with "intentionally forcibly assault[ing]" a federal employee using a deadly weapon, possession and discharge of a firearm during a crime of violence, and unlawful possession of a firearm by a convicted felon. 18 U.S.C. §§ 111(a)(1), 111(b), 924(c)(1)(A)(i), 924(c)(1)(A)(iii), 922(g)(1) & 924(e)(1). Because Williams committed these offenses while he was on supervision, the United States Probation Office filed a violation petition, categorizing Williams's drug and firearm charges as Grade A violations.

The Parties entered into a plea agreement to resolve the charges.[1] Fed. R. Crim. P. 11(c)(1)(C). Williams agreed to plead guilty to the lesser included offense of conspiracy to distribute more than 500 grams but less than two kilograms of cocaine and to Counts One and Two of the shooting indictment. 21 U.S.C. § 846; 18 U.S.C. §§ 111(a)(1), 111(b), 924(c)(1)(A)(i) & 924(c)(1)(A)(iii). The Parties stipulated to a sentence of twenty years' imprisonment and agreed that a revocation sentence could also be imposed.

At the change-of-plea hearing, Williams admitted to the offenses as charged and made no objection to the Government's recitation of the factual basis for the plea, which included the ways the ATF officers made their presence known before executing the search warrant. The District Court accepted Williams's guilty plea.

At Williams's joint sentencing and violation of supervised release hearing, the District Court adopted the Presentence Investigation Report ("PSR") and Williams's supplemental addendum, to which the Government and Probation did not object. The addendum noted that on the day of the incident, Williams asserted to others that he did not know he was shooting at an ATF officer.

---

[1] Williams initially wished to proceed to trial and present, *inter alia*, a mistake-of-fact defense—that he did not know he was shooting at an ATF officer. Williams filed a pro se motion to dismiss his appointed counsel over disagreements respecting trial preparation. At a hearing on the motion, Williams's counsel told the court that he had informed Williams that his proposed mistake-of-fact defense was ill-advised because Williams's mistaken belief that he was shooting at a robber or intruder appeared unreasonable and because the Government only needed to establish that Williams intended to shoot someone—not that he intended to shoot a federal agent. The court denied Williams's motion, finding that Williams's counsel was providing zealous and competent representation and that Williams's problem with his attorney amounted to a difference of opinion.

In his allocution, Williams explained that on the night of the incident, he had smoked medical marijuana while he worked on a tattoo for a client. Williams said that after the client left, he fell into a deep sleep in his chair "with the firearm on me." Appx 302. Williams also claimed he carried a firearm that night because he had previously been robbed at gunpoint and because, around the time of the incident, a client informed him that someone was conspiring to rob him.

Next, with the aid of surveillance footage from a store across the street and video footage from his residence, Williams explained that he was unaware that law enforcement had surrounded his house. Williams said that he was roused by "a loud bang," saw the door open, saw "a blur and a gun," and then shot Officer Wiegner. Appx 301. Williams claimed that it was only after he shot Officer Wiegner that he realized that he had shot a police officer and not a robber or intruder. Williams also stated that if he had truly acted with malicious intent—rather than out of fear for his life— he would have shot more than once. Although Williams explained that he was remorseful, he attributed his reflexive decision to shoot Officer Wiegner to the officers' failure to announce themselves.

During Williams's allocution, the District Court asked questions about his photographic and video evidence. The District Court was also skeptical of Williams's apparent attempt to deemphasize his involvement in the drug trafficking conspiracy, asking Williams to confirm that he had, in fact, pleaded guilty to the charge. After Williams's allocution, the District Court noted that it would take into consideration everything Williams had said when imposing sentence and any revocation sentence. The

5

Government explained that although Williams's statements respecting the night's events were misleading and lacked credibility, the District Court should still accept the plea agreement. Officer Wiegner then testified, encouraging the court to accept the plea agreement despite his physical injuries and the emotional toll the shooting had on him.

The District Court accepted the plea agreement, noting that its decision to do so was challenging and was made more difficult by Williams's allocution, stating: "[f]rankly, your allocution today did not help you in this court deciding to accept or reject the plea agreement. In fact, it hurt you probably more than anything by what you said to this court today." Appx 307. The District Court ascribed particular weight to Officer Wiegner's "admirabl[e]" recommendation that it accept the agreement. *Id.* The District Court then imposed the stipulated sentence of twenty years' imprisonment followed by eight years of supervised release. During its analysis of the 3553(a) factors, the District Court discussed the nature and circumstances of Williams's offense, including the ways in which the ATF officers made their presence known during the search. After imposing sentence, the District Court twice asked counsel if they wished to raise anything else before it addressed Williams's supervised release violations.

During the revocation portion of the hearing, the Government explained that it would rely on the evidence introduced at Williams's change-of-plea hearing and in his PSR to establish the violations. Williams admitted to the Grade A violations, and as a result the District Court found that the Government had established the violations by a preponderance of the evidence. The District Court then determined that while Williams's Grade A violations resulted in a Guidelines range of fifty-one to sixty-three months'

6

imprisonment, under 18 U.S.C. § 3583(e)(3), the maximum revocation sentence it could impose was sixty months, resulting in a final Guidelines range of fifty-one to sixty months' imprisonment.

Williams made no objections to the Grade A violations determination or the Guidelines calculation. Williams's counsel attempted to explain that rather than protest his guilt, Williams had sought to use his prior allocution to tell the Court about his state of mind during the incident. The Government countered, stating that Williams's allocution instead showed that he refused to take responsibility for his actions. The District Court revoked Williams's supervision and sentenced him to sixty months' imprisonment, to be served consecutively with his sentence for the new offenses. The District Court concluded that Williams's actions showed a "complete disregard for the law, the victim" and the terms of his supervision, and that this term of imprisonment was the only way to control his dangerous, "repetitive[,] and reprehensible conduct." Appx 314. Neither party objected to the revocation sentence, which Williams timely appealed.[2]

II.[3]

When reviewing a sentencing determination, we must ensure that "'a substantively reasonable sentence has been imposed in a procedurally fair way.'" *United States v.*

---

[2] Williams also appealed his conviction on the new charges. Because the appeal was barred by the appellate waiver provision in his guilty plea agreement, a Panel of this Court granted the Government's Motion for Summary Affirmance and dismissed his appeal. *See United States v. Dion Williams*, No. 23-1118, Doc. No. 34.

[3] The District Court had jurisdiction over this matter under 18 U.S.C. §§ 3231 and 3583(e). We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

*Tomko*, 562 F.3d 558, 566 (3d Cir. 2009) (en banc) (quoting *United States v. Levinson*, 543 F.3d 190, 195 (3d Cir. 2008)). We review claims for procedural and substantive error for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). If, however, no objection was made at sentencing to the asserted procedural error, we review for plain error. *See United States v. Flores-Mejia*, 759 F.3d 253, 255 (3d Cir. 2014) (en banc).

"An error is plain if it is 'clear' or 'obvious,' 'affects substantial rights,' and 'affects the fairness, integrity or public reputation of judicial proceedings.'" *Flores-Mejia*, 759 F.3d at 259 (quoting *United States v. Dragon*, 471 F.3d 501, 505 (3d Cir. 2006)). "An error 'affects substantial rights' when it is prejudicial, that is, when it 'affected the outcome of the District Court proceedings.'" *Id.* (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)). Meeting this standard "is difficult, 'as it should be.'" *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Dominguez Benitez*, 542 U.S. 74, 83 n.9 (2004)).

A.

First, Williams argues that the District Court procedurally erred when it conducted its 3553(a)-factor analysis by failing meaningfully to consider his allocution respecting his honest, but mistaken, belief that he was shooting at a robber or intruder, rather than an ATF officer.[4] Williams argues that the court treated his mitigating arguments about his

---

[4] The Parties dispute whether this issue is preserved, and thus what is the appropriate standard of review. Williams explains that his attorney "functionally objected by alerting the Court that [he] was not protesting guilt, but was [instead] expressing remorse." Williams Br. 33. "[A] defendant must raise any procedural objection to his sentence at the time the procedural error is made, *i.e.*, when the sentence is imposed without the court having given meaningful review to the objection." *Flores-Mejia*, 759 F.3d at 256. But

subjective intent, intoxication, mistake, and contrition as remorseless attempts to undermine his plea. We disagree.

A sentencing court must follow the three-step framework set out in *United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006). As relevant here, under the third step, a court must give "meaningful consideration to the sentencing factors set forth in 18 U.S.C. § 3553(a)." *United States v. Freeman*, 763 F.3d 322, 335 (3d Cir. 2014). This exercise involves "acknowledg[ing] and respond[ing] to any properly presented sentencing argument which has colorable legal merit and a factual basis." *United States v. Begin*, 696 F.3d 405, 411 (3d Cir. 2012); *see also United States v. Schonewolf*, 905 F.3d 683, 685 n.4 (3d Cir. 2018) (explaining that courts must also consider the 3553(a) factors when imposing revocation sentence). "Failure to give 'meaningful consideration' to any such argument renders a sentence procedurally unreasonable which, when appealed, generally requires a remand for resentencing." *Flores-Mejia*, 759 F.3d at 256 (quoting *Begin*, 696 F.3d at 411). But a court need not agree with every sentencing argument made by counsel, *see Tomko*, 562 F.3d at 569, nor "discuss every argument made by a litigant if an argument is clearly without merit," *United States v. Lychock*, 578 F.3d 214,

---

where a party "make[s] an objection to a procedural error at an earlier point[,] . . . when the procedural error became evident, the defendant need not repeat the objection after sentence is imposed." *Id.* at 255 n.1. Here, counsel did not formally object after either sentence was pronounced, and his comments respecting Williams's allocution—made later during the revocation portion of the hearing—were not clearly an objection to the court's purportedly erroneous 3553(a)-factor analysis. Accordingly, we will apply plain error review to Williams's unpreserved procedural challenge. *See Puckett*, 556 U.S. at 135. Finally, even if we were to apply Williams's preferred standard of review, we would nonetheless affirm on the same basis.

219 (3d Cir. 2009). Ultimately, procedural reasonableness is ensured if "the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)." *United States v. Grier*, 475 F.3d 556, 571 (3d Cir. 2007); *see also Tomko*, 562 F.3d at 568 (explaining that a court need not discuss and make findings as to each of the 3553(a) factors).

Here, Williams's allocution lacked a factual basis in the record, so the District Court was not required to address it. *See Lychock*, 578 F.3d at 219. Williams's allocution ran contrary to his acquiescence to the facts adduced at his change-of-plea hearing and in the PSR adopted at sentencing. Williams claimed he reflexively shot Officer Wiegner as soon as the door was breached because he did not hear the police and thought he was being threatened by a robber or intruder. But the factual record shows that the officers announced their presence numerous times, including via the bearcat's PA system and by shouting each time they tried to breach the doors to Williams's residence. In addition, the police needed to breach the door to Williams's residence twice, with a twenty-three second delay between attempts, further undercutting Williams's claim that he made an honest mistake or snap decision. Because the main basis of Williams's mitigation argument—the genuineness of his belief that it was not, in fact, police at his door—was impugned and unsupported by the factual record, the District Court did not need to consider it in its 3553(a)-factor analysis.[5]

---

[5] For similar reasons, the District Court was not obligated to consider Williams's addition to the PSR that he told people the day of the incident that he did not know he had shot a police officer. Williams's day-of statements strain credulity given the significant efforts by the police to announce their presence when executing the search.

Although Williams's allocution lacked a factual basis, the record nonetheless reflects that the District Court meaningfully considered and rejected his version of events. The District Court listened to Williams's allocution and questioned him about the evidence he presented, as well as when his statements respecting his involvement in the drug conspiracy appeared to contradict his guilty plea. *See United States v. Lessner*, 498 F.3d 185, 204 (3d Cir. 2007) (questioning during defendant's allocution reflected court's "studied familiarity with the facts of the offenses"). And the District Court's statement that Williams's allocution hurt him more than it helped him before it ultimately accepted the guilty plea agreement reflects that it heard Williams's allocution and found it less than persuasive. Under our caselaw, the District Court's commentary on Williams's allocution reflects that it meaningfully considered his sentencing argument. *See Flores-Mejia*, 759 F.3d at 256.

After accepting the plea agreement, the District Court's 3553(a)-factor analysis made clear that it was unpersuaded by Williams's mitigation argument. When the Court described the nature and circumstances of Williams's offense, it reiterated that the ATF officers made numerous efforts to make their presence known—thus rejecting Williams's contention that they had failed to do so.

Nor did the District Court change its position after Williams's counsel tried to explain his client's allocution during the revocation proceeding. The District Court's conclusion that Williams's revocation sentence reflected his "complete disregard for the law" and was the only way to deter his dangerous and repetitive conduct demonstrates that it did not believe Williams's self-serving version of events. Appx 314. Accordingly,

11

any error the District Court may have made in its consideration of Williams's allocution was not plain. *See Puckett*, 556 U.S. at 135.

## B.

Next, Williams urges that the District Court erred in finding that his conviction for shooting a federal agent qualified as a Grade A violation of his supervised release because 18 U.S.C. § 111(b) is not categorically a crime of violence.[6] Williams's argument fails, however, as we do not apply the categorial approach in the revocation context. *United States v. Carter*, 730 F.3d 187, 192 (3d Cir. 2013). Instead, a court "may consider a defendant's actual conduct," and not just the formal elements of an offense of conviction, "in determining whether they have broken the law and thus the terms of their supervised release." *Id.*; *see also* U.S.S.G. § 7B1.1 cmt. n.1 ("[T]he grade of violation is to be based on the defendant's actual conduct"). In doing so, a court must identify the specific forcible offense because its consideration of the defendant's actual conduct must ultimately address the elements of the crime committed. *See Carter*, 730 F.3d at 192–93.

The United States Sentencing Guidelines set forth three grades of supervised release violations. U.S.S.G. § 7B1.1(a). A Grade A violation, the most serious grade of violation, is "conduct constituting . . . a federal, state, or local offense punishable by a term of imprisonment exceeding one year that . . . is a crime of violence." *Id.* at § 7B.1(a)(1). A "crime of violence," is an "offense under federal or state law, punishable by imprisonment for a term exceeding one year, that . . . has as an element the use,

---

[6] Williams concedes that this argument is unpreserved, so we review for plain error. *See Puckett*, 556 U.S. at 134.

attempted use, or threatened use of physical force against the person of another."

U.S.S.G. § 4B1.2(a)(1); *see also* U.S.S.G. § 7B1.1, cmt. n.2 (incorporating the term "crime of violence" as defined in Section 4B1.2(a), the career offender Guideline, into the definition of a Grade A violation). Physical force, in turn, "means *violent* force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010).

Here, the District Court correctly determined that Williams's conviction under 18 U.S.C. § 111(b) constituted a Grade A violation of his supervision. When the District Court asked the Government what evidence it would use to prove that Williams committed the violations, the Government explained that it would rely on the evidence presented at Williams's change-of-plea hearing and the offense conduct in the PSR. At the change-of-plea hearing, Williams pleaded guilty to "intentionally[,] forcibly assault[ing]" an officer of the United States as charged in the indictment in violation of 18 U.S.C. §§ 111(a)(1) and 111(b). Appx 208. Because Williams admitted to the assault as charged, he conceded that he intentionally used physical force against his victim—and thus committed a crime of violence. *See United States v. Bullock*, 970 F.3d 210, 215 (3d Cir. 2020) (explaining that 18 U.S.C. § 111(b) "necessarily requires a finding [that] the defendant intentionally used, attempted to use, or threatened to use physical force against the person of another" (internal quotation markets and alterations omitted)). And because this crime of violence is punishable by up to twenty years' imprisonment, it satisfies the duration of incarceration required for a Grade A violation. *See* 18 U.S.C. § 111(b); U.S.S.G. § 7B1.1(a)(1). Accordingly, the District Court committed no error in

13

determining that Williams committed the Grade A violation.

C.

Finally, Williams challenges the substantive reasonableness of his consecutive sixty-month revocation sentence. We consider "whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)" when reviewing the substantive reasonableness of a sentence. *Tomko*, 562 F.3d at 568. A defendant bears a "heavy burden" to show that a within-Guidelines sentence is substantively unreasonable, *United States v. Fountain*, 792 F.3d 310, 323 (3d Cir. 2015), because we presume a properly calculated Guidelines-range sentence to be substantively reasonable, *Rita v. United States*, 551 U.S. 338, 347 (2007). We will affirm "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." *Fountain*, 792 F.3d at 322 (quoting *United States v. Wright*, 642 F.3d 148, 152 (3d Cir. 2011)).

Williams takes issue with the District Court's assessment of the mitigating evidence he presented. Yet a failure to weigh mitigating evidence to the extent a defendant would prefer does not result in a substantively unreasonable sentence. *United States v. Young*, 634 F.3d 233, 243 (3d Cir. 2011). As we have discussed, the District Court heard Williams's allocution, found it unpersuasive, and imposed a consecutive revocation sentence because it reflected the seriousness of his supervised release violations. In these circumstances, we do not find Williams's revocation sentence substantively unreasonable.

III.

14

For the foregoing reasons, we will affirm Williams's revocation sentence.